Samuel KOPET, Appellant,

v.

ESQUIRE REALTY COMPANY et al., Appellees.

No. 42, Docket 75–7047.

United States Court of Appeals, Second Circuit.

Argued Sept. 2, 1975.

Decided Sept. 29, 1975.

---

Robert S. Churchill, New York City (Kass, Goodkind, Wechsler & Gerstein and David M. Gerstein, New York City, on the brief), for appellant.

Herman Odell, New York City (John F. Zulack and Nathaniel M. Sokolski, New York City, on the brief), for appellees.

Before KAUFMAN, Chief Judge, and LUMBARD and ANDERSON, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

In 1962, the appellant, Samuel Kopet, became a limited partner of appellee, Esquire Realty Company (Esquire), a limited partnership engaged in the business of owning real estate. On November 1, 1971, Esquire wrote to each of its 350 limited partners offering them the opportunity to invest additional funds for the purpose of refinancing a mortgage on one of Esquire's properties. No registration statement for this offer was filed with the Securities and Exchange Commission, nor was a prospectus filed with the New York State Department of Law. Pursuant to the offer, appellant and 185 other limited partners bought

additional partnership interests in the aggregate amount of $131,250.

Appellant brought suit against Esquire and three general partners thereof, also appellees here, alleging, *inter alia,* violation of §§ 5 and 12 of the Securities Act of 1933 and of § 352e of the New York General Business Law, for failure to file the required registration statement and prospectus, respectively, in connection with the 1971 offer. This appeal is from the district court's denial of appellant's application for an award of counsel fees for services rendered by his attorneys in that action.

With respect to the above-mentioned claims relating to the lack of required filings, appellees admitted liability below, and the district court granted summary judgment in favor of appellant. The court also ordered that the action on these claims be maintained on behalf of the class of all limited partners who purchased additional interests in response to the 1971 offer. Appellant's complaint also contained two other counts[1] based upon appellees' alleged failure to provide annual certified financial statements to the limited partners, as required by the original 1962 partnership agreement, and to account for the profits of Esquire, as required by the New York Partnership Law. In the course of defending these claims, which were ultimately dismissed for lack of pendent jurisdiction, the appellees produced financial statements which revealed, for the first time, that two of the general partners, Benjamin Kaufman and Nathan P. Jacobs, had borrowed sums totaling hundreds of thousands of dollars from Esquire and that the general partners had contracted to sell Esquire's principal asset. Moreover, it appears that during the course of this litigation, the appellees sent certified financial statements to the limited partners for the first time since Esquire was created. As a result of these revelations, limited partners of Esquire have instituted suit in the New York State courts alleging that Kaufman, Jacobs and Esquire have breached both their common law and statutory fiduciary duties.

After the lower court had disposed of the parties' motions for summary judgment and dismissal as related above, appellant asked for counsel fees in the amount of $25,000, plus disbursements of $331.41, to be paid by the individual appellees, Benjamin Kaufman and Nathan P. Jacobs, or, in the alternative, appellee, Esquire Realty Company. The district court denied the motion.[2] We reverse on the issue of awarding counsel fees against Esquire.[3]

To establish his claim for counsel fees, appellant contended that the favorable summary judgment on the securities law claims benefited Esquire by "causing Esquire's management to conduct its future affairs in conformity with legal requirements" and the policy of full disclosure regarding securities offerings. He further argued that the litigation concerning the claims which were eventually dismissed benefited Esquire by resulting in the release of important information about the management of the partnership, which may among other things

---

1. The complaint contained a fifth count, on which summary judgment was denied, alleging that the 1971 letter of offer was false and misleading, in violation of the 1934 Securities Exchange Act, Rule 10b–5 thereunder, and the 1933 Act. Appellant voluntarily discontinued this claim, saying that the favorable judgment on the other securities law counts "would yield substantially the relief which could have been obtained" thereunder.

2. The court did, however, leave open the possibility of assessing counsel fees against the recovery of the limited partners who elected to rescind their 1971 purchases.

3. Appellant argues that the individual appellees, in preference to the partnership, should pay counsel fees because of their alleged "flagrant disregard" of their legal obligations and their "wanton acts" in violation of the limited partners' rights. Appellant's characterizations do not, however, suffice as a basis for allowing counsel fees against the defendants below under the "in bad faith, vexatiously, wantonly, or for oppressive reasons" exception to the general American rule on counsel fees. 6 J. Moore, Federal Practice ¶ 54.77[2], p. 1709 (2d ed. 1972), cited in *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1971).

enable the limited partners to win a recovery in the state court from some or all of the general partners, and in the distribution to the limited partners of certified financial statements in accordance with the partnership agreement.

■■ As for the first of the above claims, the district court saw no benefit accruing to the partnership as a whole, as distinguished from individual purchasers who would be entitled to obtain rescission or damages. But as the Supreme Court has developed the "common fund" rationale for awarding attorney fees, assessment of such fees to a group of beneficiaries may be predicated on the conferral of benefits which are neither monetary in nature nor explicitly sought on behalf of the entire group. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). In *Mills*, which involved proxy violations under the 1934 Act, the Court found that "the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders." 396 U.S. at 396, 90 S.Ct. at 627. Here, similarly, it appears that appellant rendered a service to the partnership by vindicating the statutory policy against unregistered offerings. Esquire benefited from appellant's action both in arresting an existing violation of the law and in the deterrent effect which it may be assumed the action will have on the future conduct of Esquire management. Moreover, all limited partners, whether or not they decided to purchase in response to the 1971 offer, belong to the class of beneficiaries of the securities law requirement that adequate disclosure be made on which to base an informed investment decision.

■ While it is true that those limited partners who actually purchased in 1971 have been given an additional benefit, in the form of a right to rescind,[4] the wider benefits to Esquire should nonetheless be recognized in allocating payment of counsel fees.[5] We leave it to the sound discretion of the district court to decide whether and, if so, how this distinction in benefits conferred is to be taken into account; e. g., by apportioning the relevant fees in some equitable way between the smaller class of rescinding limited partners and the remaining limited and general partners.

■■ As to the second of the claimed benefits, the district court refused to award counsel fees because the benefits related to state law claims which were dismissed for lack of subject matter jurisdiction. There is no question, however, that federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, e. g., after a settlement. See *Blau v. Rayette-Faberge, Inc.*, 389 F.2d 469 (2 Cir. 1968); *Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107 (2 Cir. 1964); *accord, Thomas v. Honeybrook Mines, Inc.*, 428

---

4. We note, however, that since the current market value of the limited partnership interests is higher than the original purchase price, neither party anticipates wholesale rescissions. Appellant also contends, with some force, that limited partners may be encouraged to retain, rather than rescind, their interests precisely because of the "therapeutic" effect of his litigation of the future conduct of Esquire's management. Nothing in this opinion is intended to indicate that plaintiffs in the typical litigation leading to monetary recovery may rely on the incidental, deterrent impact of their judgment as the basis for an application for payment of the fees of their attorneys.

5. While the issue has never been raised by the defendants-appellees, we note that an award of attorney fees here would not appear to be inconsistent with *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). In that case there was no question of any benefit having been conferred on the party from which recovery of such fees was sought. Moreover, the remedies expressly provided by the applicable statute in *Fleischmann* were more comprehensive, "intricate," and "meticulously detailed" than what is found in § 12 of the 1933 Act.

F.2d 981 (3 Cir. 1970), *cert. den.*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809. It may be true that appellant will be able to recover counsel fees in connection with further state court litigation against appellees using, *inter alia*, information obtained in the course of these proceedings in the federal court. This should not preclude the district court from recognizing that Esquire has already received substantial benefits from appellant's efforts in the litigation before it, including the production of certified financial statements covering past years of the partnership's business, and from allocating the legal costs incurred in obtaining them to all who benefited.

This case is, therefore, reversed and remanded to the district court for further proceedings not inconsistent with this opinion. In so doing we express no opinion as to the monetary value of the legal services in question, but leave that to the discretion of the district court.