Arthur C. FOLEY, Appellant,

v.

Joseph R. DEVANEY et al.

No. 75-1730.

United States Court of Appeals, Third Circuit.

Argued Dec. 9, 1975.

Decided Jan. 14, 1976.

John J. Bracken, Bracken & Craig, Newark, N.J., for appellant.

Edward J. Russo, Russo, Tumulty & Nester, Jersey City, N.J., for appellees.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM:

This appeal concerns the construction of a Pension Plan of the International Brotherhood of Electrical Workers (IBEW), Local No. 164, under which the appellant, Arthur Foley, claims a monthly pension from the date of his retirement in July 1973. The United States District Court for the District of New Jersey dismissed his complaint against the Trustees of the pension fund who have denied his application for pension benefits.[1] We affirm.

Foley became a member of the IBEW in June 1943. Thereafter, he worked continuously under collective bargaining contracts with IBEW Locals from 1949 to 1973. During those years, Foley was employed under Local No. 164 contracts from 1952 to 1955 and again from 1963 to 1973, when he retired. The Trustees of the pension fund denied his application for benefits because they found that he had not fulfilled the requirements of the Pension Plan.

The Pension Plan was established on October 1, 1954, by IBEW Local No. 164 of Hudson and Bergen Counties, New Jersey, and the Hudson-Bergen Division of the New Jersey Chapter of the National Electrical Contractors Association pursuant to Section 401 of the Internal Revenue Code of 1954, 26 U.S.C. § 401 (1971).[2]

Those portions of the original Pension Plan of 1954 which concern us here are:

*Article III, Section 1. Normal Pension.*

A Participant shall be eligible for a Normal Pension if, at retirement

(a) he has attained age 65; and

(b) he has credit for 20 years or more of employment under I.B.E.W. Contracts; and

(c) he has credit for employment under Local No. 164 Contracts for the last 10 years (or more) immediately preceding his retirement.[3]

*Article IV, Section 2. Service Prior to January 1, 1954.*

(a) A Participant shall receive a year of credit for each year prior to January 1, 1954 in which he was employed under I.B.E.W. or Local No. 164 Contracts.

*Article IV, Section 8. Breaks in Employment.*

After January 1, 1954, failure of a Participant who is mentally and physically able to work to make himself available for employment under Local No. 164 Contracts during a full calendar year shall constitute a break in employment and shall have the effect of cancelling a person's previously accumulated years of credit under this Pension Plan.

---

1. Jurisdiction was founded on diversity under 28 U.S.C. § 1332 (1971). Plaintiff is a New York citizen, defendants are New Jersey citizens, and the amount in controversy is deemed to exceed $10,000 although the claimed benefits do not yet total that sum. *Aetna Cas. & Surety Co. v. Flowers*, 330 U.S. 464, 67 S.Ct. 798, 91 L.Ed. 1024 (1947).

   As jurisdiction is premised on diversity, we must look to the choice of law rules of the forum state to determine which state's law governs. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey choice of law rules would have us apply the "lex loci contractus." *Ray v. Beneficial Fin. Co.*, 92 N.J.Super. 519, 224 A.2d 143, 149 (1966). The contract in question was executed in New Jersey, both parties to it were located there, and New Jersey Trustees administer the fund. Thus, New Jersey law applies to the construction of the contract. Foley, the New York plaintiff, agrees.

2. It is not a union trust fund administered under 29 U.S.C. § 186(c) (1971).

3. By amendment in 1969, the Plan was modified to require the following for eligibility for a pension: (a) attainment of age 62; (b) accumulation of at least 20 years of "Pension Credit." The amendment did not treat employment between January 1, 1954, and March 31, 1969, except to state that no employee would be deprived by the amendment of rights already earned.

Judge Lacey, sitting without a jury, found that Foley's failure to work under Local No. 164 contracts between September 1955 and May 1963 constituted a "break in employment" within the terms of Article IV, Section 8[4] which served to cancel Foley's previously accumulated credits for IBEW employment. Thus, when Foley retired in July 1973 his aggregate credits were insufficient to entitle him to a pension under the Pension Plan.

■ Foley argues that the Article IV, Section 8, provision applies only to employment under Local No. 164 contracts, and since he worked without a break under Local No. 164 contracts for the full ten years required by Article III, Section 1(c), his credit for his prior fourteen years of non-Local No. 164 work cannot be cancelled by Article IV, Section 8. Foley, therefore, claims credit for twenty-four years' accumulated IBEW work, ten of them just before retirement under Local No. 164 contracts. By this reasoning, Foley contends he has complied with the terms of the Pension Plan and qualifies for benefits.

Our construction of the Pension Plan differs diametrically from Foley's. We first observe that "credit" ("Pension Credit" after the 1969 amendment) as used in Article III, Section 1(b) and (c), is a term of art and does not automatically flow from employment under IBEW contracts, whether Local No. 164 or not.[5] "Break in employment" is similarly limited by the definition in Article IV, Section 8, and cannot be given its commonplace meaning here.

Bearing in mind the special meaning of both terms and taking the above-quoted sections of the 1954 Pension Plan together, it appears that Article IV, Section 2(a), is a "grandfather clause" which allowed persons who had worked under IBEW contracts before the effective date of the Pension Plan to receive credit for their past employment. Under this provision, Foley would have obtained credit for his employment from 1949 to 1954 even though the Pension Plan was not in effect in those years and even though neither he nor his employers had at any time made any contributions in his behalf to the Plan.

The Pension Plan, however, drew the line at January 1, 1954, by providing that thereafter credit could be accrued only by being employed or available for employment under Local No. 164 contracts. Foley would have the grandfather clause allow credits for years of non-Local No. 164 employment *after* the Pension Plan went into effect. But that was manifestly not the purpose of the clause; it simply settled accounts up to January 1, 1954. Thereafter employment under Local No. 164 contracts was a *sine qua non* of eligibility because the actuarial sufficiency of the Plan was predicated upon contributions to the Plan.[6] Failure to be available for such employment within any one calendar year acted to erase those non-contributory credits which had been allowed under the grandfather clause. Between September 1955 and May 1963, no contractor in Local No. 164's jurisdiction made any contribution to the Fund in behalf of Foley.

4. At oral argument, plaintiff labeled this conclusion of the district court a "factual error." We agree the finding that the term "break in employment" was intended to refer to *any* non-Local No. 164 employment after January 1, 1954, is a finding of fact. As such, it can be overturned only if it is "clearly erroneous" pursuant to Fed.R.Civ.P. 52(a).

5. Article IV, Section 1, states: "Service shall be credited only as provided in this Plan."

6. The Joint Pension Plan published in 1954 points out, on its first page, that contractors contribute 5% of gross payroll for their covered employees. It states:

Actuarial studies were made to determine the size of the benefit the Pension Fund could afford to pay. . . . Also an estimate was made of the income which the Pension Fund could expect from the Employer and Employee contributions.

Hence, Foley, by not working under Local No. 164 contracts between 1955 and 1963, suffered two detriments. He did not accrue credits under the Plan during that period, and, unfortunately, he also lost his 1943–1954 credits. Foley's argument to the contrary, if applied, would seriously damage the vitality of the Fund and would have the court judicially rewrite the terms of the Plan. This we may not do.

Foley argues in the alternative that the Trustees should be estopped from denying his application because they sent out three letters in April 1969[7] which led him to believe that he would be eligible for pension benefits. We agree with Judge Lacey that there is nothing in the letters upon which Foley could have reasonably relied to his detriment. Under the 1954 Pension Plan, he had not accrued sufficient credits to qualify for a pension upon his retirement in 1973. Neither the letters nor the amendments to the Pension Plan in 1969 and 1972 altered that state of affairs.

Moreover, the letters, although not couched in the clearest English, contain no statements which contradict the terms of the 1954 Pension Plan or the amendment contemplated in 1969 as interpreted herein. One letter, in assuring employees that the proposed amendment would not deprive them of earned rights, outlines the accrual of credits as follows:

> The new plan does require 20 years of covered employment. But, for years before 1965, "covered employment" includes not more than 10 years of work under non-164 contracts, which may be established by proper proof.

The foregoing exposition is consistent with our analysis of the Pension Plan. That is, the formula urged on us by Foley in which eligibility results from ten years' employment under non-Local No. 164 contracts plus ten most recent years'

employment under Local No. 164 contracts, regardless of the date on which Local No. 164 employment commences, is valid only as to employees reaching twenty years' IBEW employment as of 1965. Those employees could have continued working in non-Local No. 164 employment until the end of 1954 without losing previous credits under Article IV, Section 8. If they had worked continuously under Local No. 164 contracts from that time on, by 1965 they would have fulfilled the requirements of Article III, Section 1(b) and (c).

For employees retiring *after* 1965, "covered employment" would necessarily include more than ten years of Local No. 164 employment by virtue of the "break" provision. That provision requires Local No. 164 employment or availability for employment to begin within one calendar year after January 1, 1954, and continue thereafter each calendar year in order to preserve accumulated credits.

Foley also appeals from the denial of counsel fees. Recently, the United States Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), admonished courts to award counsel fees sparingly and only within established exceptions to the American rule against the award of fees.

Foley claims that the Trustees acted in bad faith, so a punitive award of attorneys' fees would be appropriate under *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). He also contends that counsel by their efforts conferred a benefit on an ascertainable class, at least by clarifying the terms of the Pension Plan if not by recovering such benefits,[8] and that *Hall* allows attorneys' fees in such circumstances.

The charge of bad faith is unfounded. The Trustees acted properly in defense of the fund which they are charged to

---

7. The letters were in response to a suit against the Trustees of the Pension Fund in the New Jersey Superior Court, *Branch v. White*, 99 N.J.Super. 295, 239 A.2d 665 (App.Div.1968).

8. Foley points out that a case identical to this one is now pending in the United States District Court of New Jersey, *McKinney v. Devaney*, No. 74–637, which demonstrates that other similarly situated plaintiffs will derive benefit from a decision in this case.

administer. As the outcome of the case demonstrates, their defense was not frivolous or merely vexatious. Assessing counsel fees as a punitive measure would thus be inappropriate.

The exception for conferring benefits on a class usually operates only when a fund is recovered, so that all members of the class who will share in the fund will also share the burden of counsel fees. Here, there has been no recovery from which to award fees. Appellant, in his post-argument letter, cites us to *Kopet v. Esquire Realty Company*, 523 F.2d 1005 (2d Cir. 1975), a securities case in which the court awarded counsel fees on the basis that the litigation conferred substantial benefits on the plaintiff class even where an adjudication on the merits was never reached. We find *Kopet* inapposite because no benefits are conferred upon anyone by this litigation. Moreover, this is not a class action. In addition, the *Kopet* court reached its decision without reference in its opinion to the recent decision by the United States Supreme Court in *Alyeska*.

The district court's judgment dismissing the complaint and denying the award of attorneys' fees will be affirmed.