**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harawese Rhennae MOORE,
Defendant-Appellant.**

No. 76–1527.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 19, 1977.

Decided June 3, 1977.

John E. Green, Oklahoma City, Okl. (David L. Russell, U. S. Atty., Oklahoma City, Okl., on the brief), for plaintiff-appellee.

Stephen E. Connor, Denver, Colo., for defendant-appellant.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

Harawese Rhennae Moore was convicted by a jury of unlawfully attempting to damage and destroy the United States Federal Courthouse Building in Oklahoma City, Oklahoma by means of a bomb device in violation of 18 U.S.C. § 844(f). On appeal Moore urges some six grounds for reversal, one of which is the alleged insufficiency of the evidence. Hence a review of the evidence is in order.

At about ten o'clock a. m. on Sunday morning, September 28, 1975, an object, appearing to be a bomb, was discovered by a security guard at the west entrance of the Federal Courthouse in Oklahoma City, Oklahoma. Although the fuse to the bomb had been lit, the bomb had not exploded. A bomb expert testified as to the explosive potential of the bomb and explained why it had failed to in fact explode. In addition to finding the bomb, a paper sack was found on the ground near the bomb. A matchbook was located near the paper sack and a burned match was found inside. The fuse to the bomb had apparently been lighted while the bomb was still in the sack. The indentation on the bottom of the paper sack was such as to indicate that the bomb had been brought to the Courthouse in the sack. No one saw the person who planted the bomb at the entrance to the Courthouse, and it is this fact which no doubt precipitates the insufficiency of the evidence argument.

From sometime before June 1975 to November 1975, the defendant lived in a house owned by her mother and cared for by her great aunt. In early November, the defendant moved out of this house, and another tenant moved in. On November 11, 1975, the new tenant found what appeared to be a homemade bomb in a clothes hamper. The new tenant promptly reported his discovery to the local police. A bomb expert testified that the homemade bomb found in the house formerly occupied by the defendant was so similar to the bomb found at the entrance of the Courthouse that in all probability the two were made by the same person.

A fingerprint expert testified that the defendant's left thumb print and palm print were found on the bomb which had been discovered by the new tenant at defendant's former residence on November 11, 1975. The same witness also testified that two of defendant's right thumb prints and three of defendant's left palm prints were recovered from the paper sack found near the bomb at the entrance to the Courthouse.

An employee of an Oklahoma City scientific company testified that on several occasions defendant had purchased chemicals from her, including nitric acid, potassium hydroxide and charcoal. This same witness also testified that she had warned the defendant to be careful with the chemicals as they were, when mixed, potentially explosive.

One of the defendant's former coworkers at a local restaurant testified that in conversations with the defendant, the latter had indicated her ability to make bombs and had expressed a desire to someday bomb the Governor's mansion and the federal building.

A local Oklahoma City policeman testified that in June 1975 he had gone to defendant's place of residence in his investigation of another matter, not involving the defendant, and he stated that he had observed at that time in the defendant's place of residence certain materials and devices which could be used in making explosives.

The foregoing is a summary of the evidence presented by the Government and in our view is sufficient to support the jury's verdict. True, no person saw the defendant plant the bomb at the west entrance to the Federal Courthouse, but in our view the facts and circumstances are such as to permit the inference that she did just that. Such an inference is comparable to the inference long recognized in the law that the unexplained possession of recently stolen property is sufficient to support the inference that such possessor was indeed the thief. *Hall v. United States*, 404 F.2d 1367 (10th Cir. 1968) and *Jenkins v. United States*, 361 F.2d 615 (10th Cir. 1966). At this stage of the proceedings the evidence of course must be viewed in a light most favorable to the Government, and, when viewed in that light, the evidence is sufficient to support the verdict. Hence, the trial court did not err in refusing to direct a verdict of acquittal.

The indictment was based on 18 U.S.C. § 844(f), which reads, in pertinent part, as follows:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building . . . owned, possessed, or used by, or leased to, the United States, any department or agency thereof . . . shall be imprisoned for not more than ten years, or fined not more than $10,000, or both. . . .

The charging portion of the indictment reads as follows:

That on or about the 28th day of September, 1975, at Oklahoma City, Oklahoma County, in the Western Judicial District of Oklahoma, Harawese Rhennae Moore did unlawfully and knowingly attempt to damage and destroy by means of an explosive (that is a bomb device), the United States Federal Courthouse Building located at 200 Northwest Fourth Street, Oklahoma City, Oklahoma, which was then possessed and used by the United States in whole; in violation of Title 18, United States Code, Section 844(f).

The defendant filed a motion to dismiss the indictment, alleging that the charge set forth in the indictment was nonspecific and unconstitutionally vague. This motion was denied. The defendant had also filed a motion for a bill of particulars, seeking to know "the precise manner in which the crime charged in . . . the indictment is alleged to have been committed." This motion was also denied and the defendant now contends the trial court committed error in denying these motions.

In essence, the defendant was charged with attempting to damage the Federal Courthouse in Oklahoma City on September 28, 1975, by the use of an explosive bomb. The language of the indictment tracks the language of the statute, and such fact is ordinarily sufficient in itself to defeat an attack on the sufficiency of the indictment. *Hamling v. United States*, 418 U.S. 87, at 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). However, though the language of a statute is often carried over into the indictment in a general description of an offense, it must still be accompanied by a statement which will inform the accused of the specific offense, coming under the general description with which he is charged. *United States v. Hess*, 124 U.S. 483, at 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

In our view the indictment in the instant case is sufficiently specific to withstand a motion to dismiss based on vagueness and lack of specificity. The defendant knew from the language of the indictment

that she was charged with attempting to damage the Federal Courthouse on September 28, 1975, through the use of a bomb. Such is sufficient to apprise the defendant of the crime with which she stood charged. The sufficiency of an indictment must be determined on the basis of practical rather than technical consideration, and hair splitting is to be eschewed. *Robbins v. United States*, 476 F.2d 26 (10th Cir. 1973).

■ Defendant argues alternatively that assuming the motion to dismiss was properly denied, it was error for the court to deny her motion for a bill of particulars. From a reading of the indictment, defendant says, it is unclear whether she was accused of planting the bomb, conspiring with others to plant it, instructing someone to plant it, or simply designing and making the bomb. We see no reason for this uncertainty. She was not charged with making a bomb, or possessing a bomb, or transporting or conveying a bomb. The indictment charged her with attempting, on a date certain, to damage the Courthouse by means of a bomb, which is but a more formalized way of stating that she planted the bomb at or near the Courthouse with an intent to do damage to the Courthouse. There is no doubt that at all times it was the Government's theory of the case that it was the defendant herself who planted the bomb, and in our view she was so charged.

■ In any event, the granting, or denial, of a motion for a bill of particulars is a matter lying within the sound discretion of the trial court, and its exercise of that discretion will not be grounds for reversal on appeal in the absence of an abuse of that discretion. *United States v. Hedges*, 458 F.2d 188 (10th Cir. 1972). We find no such abuse in the instant case. Additionally, there is nothing in the record to indicate any prejudice to the defendant resulting from the denial of her motion for a bill of particulars. It is obvious from a reading of the record that at all times she knew what the charge against her was.

Prior to trial the defendant filed a motion to suppress the use at trial of a former conviction suffered by her in California. This motion was denied, and based on this ruling, the defendant elected not to testify in her own behalf, fearing that by testifying the jury would learn of her prior felony conviction and such would prove highly prejudicial. It is urged here that under the circumstances the trial court erred in refusing to suppress evidence of defendant's earlier felony conviction in California. We disagree.

It is agreed that the defendant did in fact suffer a prior felony conviction in California. This conviction was based on a violation of a California statute concerning the possession of destructive devices. However, this conviction was later expunged under the provisions of Title 8, Section 1203.4 of the California Penal Code, which reads as follows:

(a) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and he shall thereafter be released from all penalties and disabilities resulting from the offense of which he has been convicted. The probationer shall be informed, in his probation papers, of this right and privilege and his right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make such application and change of plea in person or by attorney, or by the proba-

tion officer authorized in writing; *provided, that, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed.* (Emphasis added.)

It is clear from the foregoing that under California statutory law the prior conviction, though expunged, may still be used for impeachment purposes in a subsequent criminal proceeding involving the same party. The defendant argues that though such may well be true in a subsequent criminal proceeding brought in California, the same result does not obtain when the subsequent criminal prosecution is in a federal court. In thus arguing, counsel relies on Rule 609(c) of the Federal Rules of Evidence.

Rule 609 concerns the use of prior felony convictions to attack the credibility of a witness, and Rule 609(c) provides as follows:

> (c) *Effect of pardon, annulment, or certificate of rehabilitation.* Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year. . . .

■ Rule 609(c), then, precludes the use of a prior felony conviction for impeachment purposes where the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure. However, whether there has been such an expungement, and the extent of such expungement, must in the instant case be determined by reference to California law. As indicated, the statute in question clearly states that the former conviction, though expunged, may be used in a subsequent criminal proceeding involving the same party. And such in our view has application in a subsequent criminal pro-

ceeding in federal court. In support of our conclusion, see *United States v. Potts,* 528 F.2d 883 (9th Cir. 1975) and *Barbosa v. Wilson,* 385 F.2d 319 (9th Cir. 1967).

In *Potts* the Ninth Circuit was concerned with a statute of the State of Washington, which, like the California statute, provided for the expungement of a prior conviction, with the further provision that in any subsequent prosecution the prior conviction may be pleaded and proved, and shall have the same effect as if the indictment had not been dismissed. An essential element in the subsequent federal criminal proceeding was the prior conviction in Washington. In *Potts,* as in the instant case, the argument was made that under local state law the prior conviction had been "absolutely erased." In rejecting this "absolutely erased" argument, and in overruling an earlier case which had approved that argument, the Ninth Circuit held that the "breadth of the remission is limited by a proviso in the statute. . . ." So, in the instant case, the breadth of the remission under the California statute must be measured by the statute itself.

In *Barbosa* a prior conviction in California had been expunged, but subject to the same proviso as is present in the instant case. The individual was later convicted of another crime, and in connection with this later conviction the Ninth Circuit held that the prior conviction could be used in determining the extent of defendant's punishment as a recidivist.

■ At trial the Government proposed to show that defendant was either a member of, or had some association with, the Symbionese Liberation Army. Such evidence, according to the Government, tended to show motive. However, the trial court ruled that no testimony concerning the Symbionese Liberation Army would be permitted. Notwithstanding, one Government witness, upon direct examination, volunteered that a Symbionese Liberation Army emblem was found at defendant's residence. Objection was made and sustained, and the jury was instructed to disregard the reference. Defendant then asked for a mistrial, which

request was denied. This ruling is now assigned as error on appeal.

When read in context, the brief reference to the Symbionese Liberation Army is not such as to require a reversal. The questions propounded by the Government were not calculated to elicit the purely voluntary reference made by the witness to the Symbionese Liberation Army. The jury was quickly instructed to disregard the statement. In such situations a mistrial is not the only way to correct an evidentiary error. *United States v. Cardall,* 550 F.2d 604, 607 (10th Cir. 1976). The reference is not such as would taint the entire trial.

As indicated above, the Government introduced evidence that defendant's fingerprints were found on the paper sack in which, it could be inferred, the bomb had been carried to the Courthouse doors on September 28, 1975. Additionally, the Government introduced, over objection, other evidence which showed that in June 1975 and November 1975 explosive materials were found in the defendant's residence, or former residence as concerns the latter date. Counsel objected to this evidence, particularly to the evidence showing that in November 1975 a bomb similar to the bomb found at the Courthouse door was found in defendant's former residence, on the ground that such comes within the prohibition of *United States v. Burkhart,* 458 F.2d 201 (10th Cir. 1972). Like the trial court, we believe *Burkhart* is readily distinguishable.

Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs, or acts is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It was on this ground that the trial court admitted into evidence the testimony which placed explosive materials in the defendant's residence in June and November 1975. We believe such evidence has bearing on the ultimate issue in the case, namely whether it was the defendant who planted the bomb at the Courthouse door on September 28, 1975. There was no error in admitting this line of testimony.

[10] Susan Harden, defendant's follow employee at the local Oklahoma City restaurant, testified as to certain conversations she had with the defendant occurring shortly before the bombing attempt. Counsel sought copies of all statements she had previously given the F.B.I. Such were produced shortly before the witness Harden testified as a Government witness, and defense counsel had the opportunity to study such over an evening recess before he cross-examined her. However, defense counsel now asserts as error the failure of the trial court to require the prosecuting attorney to furnish copies of all such statements before the trial started. We find no error. *See* 18 U.S.C. § 3500. *United States v. Feinberg,* 502 F.2d 1180 (7th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975). *See also* in this general regard *Hanks v. United States,* 388 F.2d 171 (10th Cir.), *cert. denied,* 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1968).

Judgment affirmed.