Edmund KNAUSS

v.

Patrick E. GORMAN et al.

Civ. A. No. 76–456.

United States District Court,
W. D. Pennsylvania.

June 28, 1977.

Michael A. Donadee, Pittsburgh, Pa., for plaintiff.

Michael J. Boyle, Pittsburgh, Pa., for defendants.

## OPINION

KNOX, District Judge.

Plaintiff, a retired butcher, has filed suit for pensions allegedly due him from the defendant pension fund. The pension applied for was denied by the trustees by reason of break in service (BIS) provisions of the fund. After the usual pretrial procedures the case was heard before the undersigned non-jury and is now ready for disposition on the merits.

Plaintiff started work in 1936 for Oswald & Hess Company, a Pittsburgh meatpacker, an employer covered by the fund, in 1936 and worked there as a full-time employee until September 10, 1962 the company went out of business and into bankruptcy. His service 1936–1962 was full-time and continuous except for a three months break in 1961 when the plant was closed. Plaintiff

was 54 years of age when the company went out of business having been born May 16, 1908.

During the interval September 10, 1962 to May 1966, plaintiff did not work in any covered meatpacking plant ("covered" as used herein means an employer covered by the pension fund.) During this period he says he applied to the union hall for work without success and eventually went to California where he worked in a hotel. On September 10, 1965, he began work at the Ohio Valley Meat Packing, not a covered employer, where he continued until March, 1966. In May 1966, he secured work at Northside Packing in Pittsburgh a covered employer where he continued to work until December 1972 when he was laid off. At this time he was 64 years of age.

Oswald & Hess his then employer on September 1, 1957 joined with other contributing employers to institute a pension plan for its employees. The terms thereof are set forth in Exhibit 1. At this time, plaintiff received credit for 20 years of past service with Oswald & Hess being the maximum past service credit permitted under the plan. (See p. 3 Ex. 1) A pension under this plan commenced at age 65, provided the participant retired, and continued for life.

A copy of this pension fund was posted on the bulletin board for employees to examine.

On July 1, 1962, certain amendments and changes in this pension fund generally known as the Local 424 pension fund became effective. This involved a slight change in method of computing future service credit and other changes which are not important at this time.

The original pension plan and the amended pension plan of Local 424 contained a provision (P. 8 Ex. 1) providing that if a participant ceased his employment with a contributing employer and later again became a participant "he shall be considered a new participant for all purposes of the plan thus losing any service credit relating to his prior period of employment except for (1) any non-working period not in excess of 12 months." A similar provision was contained in the 1962 amendments. Thus when Knauss lost his job in 1962 and remained without employment by a covered employer until 1966, more than one year, he lost all of his previous service credit. At the time he was separated from his employment involuntarily in 1962, he was eligible for a pension except for the fact that he was then 11 years short of the retirement age of 65 and 6 years short of the early retirement age of 60. Thus, under the plan when he again went to work for a covered employer, Northside Packing, in 1966 he had to start accumulating his service credits over again. When he was laid off again in December 1972 by Northside Packing he was still five months short of his 65th birthday.

On January 12, 1970, the Local 424 fund was merged into the Amalgamated Meat Cutters and Butcher Workmen Union and Industry Pension Fund, hereinafter referred to as "The National Fund". In the merger agreement it was provided that the trustees of the national fund would assume and agree to pay all the debts, liabilities etc. of the merging fund and that the participants in the national fund and all participants who had attained the age of 50 years on the date of the merger should receive benefits of 75% of the normal or early retirement benefits then in effect. The contributing employers included Northside Packing. Plaintiff Edmund Knauss was one of those listed as a participant.

Upon being laid off in December 1972, plaintiff filed a pension application on January 2, 1973 which was denied and further denials occurred thereafter (See Stip. Exhibits 7, 8, 9, 10). In the final letter Exhibit 11 it was stated that the Board of Trustees "again have denied you a pension because you do not have the necessary ten years eligible service due to the break in service of two years or more from August 1962 to July 1966." The National Fund Article V, Section 4 stated that if for a period of 24 months an employee fails to accumulate future service pension credits, all past and future service pension credits previously ac-

cumulated shall be cancelled. The result was therefore the same under either the 424 Plan or the National Fund, namely that Knauss' credits earned at Oswald & Hess were cancelled. Beginning in 1966 he was unable to accumulate sufficient credits to cover retirement in December, 1972.

Following the final denial Knauss brought suit in this court naming as defendants the trustees of the national fund and the national fund itself.

Two questions arise which have to be answered to determine the outcome of this suit as follows:

(1) Does this court have jurisdiction of this cause of action?

(2) Are the break in service provisions contained in both the Local 424 plan and the national plan which operate to deprive Knauss of his previously earned pension credits as the result of his involuntary separation from employment for a period of approximately 3½ years so arbitrary and capricious as to constitute structural violations of the provisions of Section 302 of the Labor Management Relations Act (29 U.S.C. § 186)?

### (1) Jurisdiction.

While the brief of defendants does not contain a serious attack upon the jurisdiction of this court nevertheless the court raised this question sua sponte at the trial and argument and plaintiff has furnished a helpful brief with respect to this problem. Since this is a question of jurisdiction over the subject matter, the duty of the court is to determine this before proceeding to examine the merits of the controversy. Historically, it should be noted that jurisdiction of actions involving the management and distribution and claims of beneficiaries in trusts such as the agreements here involved was in the state courts. (In Pennsylvania in the Equity courts or in the Orphans' courts). The question is whether any act of congress operates to divest the state courts of jurisdiction in such matters and to place the responsibility for deciding these questions in the federal courts. See *Lieberman v. Cook*, 343 F.Supp. 558 (W.D.Pa.1972)

where this court held that general supervision of the administration of such retirement plans remains where it always was in the state courts of appropriate jurisdiction. It was in these courts that suits to obtain money due an individual beneficiary should be brought, absent diversity jurisdiction in the federal courts.

In the complaint in this case, jurisdiction was grounded upon section 302(e) of the Labor Management Relations Act (29 U.S.C. § 186(e)) 28 U.S.C. § 1337, diversity jurisdiction under 28 U.S.C. § 1332 and further jurisdiction under the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1132.

### (A) ERISA.

■ Both parties have admitted in their briefs and at argument that ERISA has no application to this case. ERISA has various effective dates as to various provisions, (see 29 U.S.C. § 1031), the earliest of which is September 2, 1974, the date of passage of the legislation. Knauss' rights if any had accrued on the date of his last termination in December 1972, and there is nothing in ERISA indicating any intent to affect the rights of those persons whose rights were already determined at some previous date. It is noted that if this suit were brought today under a trust instrument wherein rights had accrued since the effective date of ERISA this court would have jurisdiction under 29 U.S.C. § 1132(a)(1)(B) authorizing suits by beneficiaries to recover benefits due them.

### (B) Jurisdiction under 28 U.S.C. §§ 1337 and 1331.

■ The claim that this cause of action is based upon a question arising under the constitution and laws of the United States as well as a claim that it is based upon 1337 conferring jurisdiction on the district courts of civil actions or proceedings arising under any act of Congress regulating commerce begs the question. Unless it is shown the rights are conferred by some piece of federal legislation then these sections do not

operate to bring the plaintiff's case within the ambit of the powers of the federal court.

### (C) Diversity Jurisdiction 28 U.S.C. § 1332.

The complaint in this case describes the individual defendants as constituting the board of trustees of the defendant pension fund and states that its principal office is located in Chicago, Illinois. The difficulty is that there is no allegation as to the citizenship of the individual defendants nor is it stated whether the pension fund is a corporation of the state of Illinois or not. Plaintiff is a citizen of Pennsylvania. To establish diversity jurisdiction he would have to show that the defendants are citizens of different states, and this does not appear in the pleadings or elsewhere. We will assume arguendo that if plaintiff establishes his right to a pension, his eventual loss establishing the amount in controversy would come to over $10,000. See *Chaudoin v. Atkinson*, 494 F.2d 1323 (3d Cir. 1974) holding that future salary is to be considered in calculating the $10,000 amount for diversity.

### (D) Jurisdiction Under 302(e).

A reference to § 302(e) of the Labor Management Relations Act (29 U.S.C. § 186(e)) shows that on its face it is primarily a criminal statute designed to prevent employers from tampering with the loyalty of union officials and to prevent extortion of tribute by union officials from employers. (See *Alvares v. Erickson*, 514 F.2d 156 (9th Cir. 1975). This case points out that the legislative history of 302 is inconclusive as to the intention of Congress in enacting the same.

The problem arises with respect to 302(c) (29 U.S.C. § 186(c)) which provides that "the provisions of this section shall not be applicable . . . (5) with respect to money or other things of value paid to a trust fund established for the sole and exclusive benefit of the employees of such employer and their families and dependents . . . ." Further in 302(e) (29 U.S.C. § 186(e)) provision is made for injunctive relief to restrain violation of this section. Counsel in this case contend that as a result of the restrictive provisions terminating past service credit which deprived Knauss of his pension the fund is not held "for the sole and exclusive benefit of the employees." and that this coupled with the right of the courts to give injunctive relief in subsection (e) gives him the right to sue to secure his pension for the past and the future.

The First Circuit has adopted what is called a narrow view of this section and held that ordinary claims for mismanagement and other claims of individuals for benefits are not properly within the jurisdiction of the federal court under 302(c) and (e) but has nevertheless indicated that under certain circumstances where there are "structural defects" in the fund relief may be had. *Bowers v. Moreno*, 520 F.2d 843 (1st Cir. 1975); *Bowers v. Ulpiano Casal Inc.*, 393 F.2d 421 (1st Cir. 1968). The latter case held that the matters of administration of a pension fund were not a satisfactory basis for federal jurisdiction but structural complaints might be found where there was unequal representation on the board of trustees or the fund was not held for the sole and exclusive benefit of the employees. Otherwise the remedies were in state court. To the same effect is *Giordani v. Hoffmann*, 295 F.Supp. 463 (E.D.Pa.1969) where the court held that the structural defects alleged were such as to withstand a motion to dismiss.

An examination indicates that the vast weight of authority is in favor of federal jurisdiction if there are structural defects in the plan in violation of § 302 including cases where it is claimed that the fund is not held for the sole and exclusive benefit of the employees. Nevertheless we are mindful that in *Lugo v. Employees Retirement Fund*, 529 F.2d 251 (2d Cir. 1976) the court said:

> "Defendants however, argue in effect that claims such as those made in this case are not claims of 'structural deficiencies' in the pension plan. According to

defendants, the 'sole and exclusive benefit' language means only that the trust funds must not grant benefits to anyone other than employees. Plaintiff argues, on the other hand, that the quoted language, coupled with the jurisdiction grant in section 302(e), confers on the federal courts the power to create a federal common law governing the management of pension plans. Cf. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). We have considerable doubt about this proposition. The length and detail of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., indicate that the regulation of pension funds with regard to such matters as vesting and procedural rights is a complex task more appropriate for Congress than for the courts. The careful attention paid by Congress in that recently enacted statute to the problem of effective dates and coverage makes us hesitate to conclude that the courts have long been authorized, via the fifth exception to a criminal statute, see note 1, supra, to create obligations similar to those of ERISA."

A more recent exposition of this question and the decision which leads this court to decide that it should take jurisdiction to determine this case on the merits is *Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976) wherein the court said:

"The courts have consistently recognized that Congress did not intend to burden the courts with claims as to whether a pension benefit was correctly or incorrectly denied, but the vast majority of courts have also held that jurisdiction at least extends to deciding whether a pension plan is arbitrary, capricious, or in some way contrary to the sole and exclusive benefit of employees. E. g., *Lugo v. Emp. Retire. Fund of Illumination Prod. Inc.*, 529 F.2d 251 (2d Cir. 1976), cert. filed, 44 U.S.L.W. 3727 (1976); *Bowers v. Moreno*, 520 F.2d 843 (1st Cir. 1975); *Alvares v. Erickson*, 514 F.2d 156 (9th Cir. 1975), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106.

"Concededly, there are some analytic difficulties in the use of the structural deficiency standard as a measure of federal jurisdiction. We need not resolve the structural deficiency versus fiduciary administration dichotomy problem, if it is a problem in defining a sound basis for jurisdiction. See *Alvares*, supra at 166 n. 5. In the present case, we conclude that the express allegations in the complaint provided a sufficient predicate for the district court's acceptance of § 302 jurisdiction. Cf. *Lugo*, supra at 255–56. Accordingly, we need not consider the plaintiff's alternative argument that 28 U.S.C. § 1331 was a proper jurisdictional basis for the suit."

In passing on to the merits, however, *Johnson v. Botica* pointed out that persons who perform work without expectation of pension payments and without contributions by their employers to the fund are not eligible for a pension merely because they performed work in the industry. The court further said on page 938: "The language of 29 U.S.C. § 186(e) which grants the district courts jurisdiction to restrain violations of that section does not confer remedial power to reformulate or redraft the eligibility requirements of a pension plan." The court pointed out that if it was found that the trustees had acted on an irrational basis and had acted capriciously the proper action of the court would not have been to reform the trust instrument by striking the unfair eligibility requirement but rather to require the trustees to formulate a substitute provision which would meet the statutory standards. This shows the magnitude of the problems with which the court and the trustees are faced in a situation of this kind. Attention was further called to the "duty and responsibility of the trustees to establish an actuarily sound formula upon which an employee will be entitled to a pension." This again points up the problem with which we will be faced when passing to the merits in determining whether the provision in question cancelling past service credits is unfair, whether the decisions of the

trustees are capricious and whether the plan is structurally sound and if so to then require the trustees to pay benefits when there is no actuarial basis for such payment in the fund.

More recently in *Burroughs v. Board of Trustees of Pension Trust Fund*, 542 F.2d 1128 (9th Cir. 1976) the court was confronted with a break in. employment question under a pension fund where the worker's application was rejected because he had failed to work the minimum number of hours. The result was cancellation of his past service credit. The court indicated that the break in employment rule when taken together with other pension provisions of the plan was reasonable on its face and an adoption of such by the trustees was not arbitrary and capricious. Recognizing the rule relative to the jurisdiction in the case of structural defects in the plan, the court held:

"[2] A structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose behind their exclusion, thus failing to satisfy the requirement that the fund shall be for the 'sole and exclusive benefit' of all employees. See *Insley v. Joyce*, 330 F.Supp. 1228 (D.C.Ill. 1971)."

In the instant case we have no data from which we could determine whether any sizeable number of union members who lost their jobs when Oswald & Hess went out of business also lost their pensions because of loss of past service credits and inability to accumulate past and future service credits at their age even if they secured work with other covered employees. Thus it is questionable whether we can find a structural defect in the plan and then go on to find no reasonable purpose behind their exclusion.

Insofar as the Third Circuit is concerned research by counsel and the court has brought to our attention only two cases bearing upon the question.

In *Gomez v. Lewis et al., Trustees of UMW of Amer. Welfare and Retirement Fund*, 414 F.2d 1312 (3d Cir. 1969), the Court of Appeals for this circuit did deal with a claim of a coal miner under the Miners Pension Fund. The court in that case did not address the question of jurisdiction but found that the action of the trustees was neither arbitrary nor capricious in light of the circumstances. More recently in *Foley v. Devaney*, 528 F.2d 888 (3d Cir. 1976) the court dealt with a claim of a union member for retirement pension. The court, however, pointed out that jurisdiction in that case was founded upon diversity under 28 U.S.C. § 1332 (See Footnote # 1), and pointed out that it was not a union trust fund administered under 29 U.S.C. § 186(c), (See Footnote # 2). The court upheld the trustees in refusing benefits because of break in employment.

 In the last analysis we are, however, confronted with the problem mentioned in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946) where the court pointed out the distinction between dismissal for lack of jurisdiction and dismissal on the merits. It teaches us that a district court must entertain a suit unless the basis for jurisdiction is wholly insubstantial and frivolous. We cannot say that in this case, plaintiff's case is wholly insubstantial and frivolous and we therefore hold that this court has jurisdiction because of alleged structural faults in the trust and will proceed to dispose of the matter upon the merits.

### (2) The Merits.

We have discussed previously certain aspects of the merits in connection with the question of jurisdiction. It should be pointed out that the court has no power to rewrite this pension plan for the parties. The terms of a pension plan are generally arrived at in a setting such as this after extensive bargaining negotiations and consultation with actuaries as to cost. Whenever a court imposes upon a pension plan obligations which were not included in it the whole actuarial setup may be disturbed with the result that the fund may end up with insufficient monies to pay pensions generally.

We do recognize in this case that Mr. Knauss was separated from employment involuntarily through no fault of his own through the failure of the company for which he worked and where he had accumulated the past years of credit under the pension plan of Local 424. Actually, though, the plan was only in effect 5 years when the company failed.

On the other hand a break in service or break in employment provision in a pension plan is not uncommon. In *Foley v. Devaney*, supra, our court of appeals upheld a provision of a pension plan providing for a break in service but noticed that the plan provided (page 889) only for breaks in employment in case of "failure of a participant who is medically and physically able to work to make himself available for employment during a full calendar year. This had the effect of cancelling previously accumulated years of credit." In the present case Knauss did make himself available for employment.

We again point out that there is no evidence in the case indicating the number of employees affected by the provision relative to cancellation of previously acquired service credit. Since this situation operates only unfairly as to a single individual such as plaintiff herein as far as we can tell we can scarcely say that there is a structural defect in the entire plan, or that the funds are not being held for the exclusive benefit of the employees. Likewise there is no evidence in this case that any of the funds of the plan have by the provisions thereof or otherwise been diverted to employers or others but it would appear that they are all held for the exclusive benefit of the employees. The only question is whether there is unfairness and arbitrary action with respect to a single individual.

It should further be pointed out that section 203 of ERISA (29 U.S.C. § 1053(b)(3)(B)) provides: "For purposes of paragraph 1 (provisions for nonforfeitable percentages in connection with minimum vesting standards) in the case of any employee who has any one-year break in service, years of service before such break shall not be required to take it into account *until he has completed a year of service after his return.*" Knauss did complete a year of service after return from the break and commencement of work at Northside Packing. While ERISA does not control this case it is some evidence of what Congress regarded as reasonable at a later date.

The defendant further points out that there is no evidence in the case showing that the one or two year break in service provision is capricious, unreasonable or arbitrary which is the basis of plaintiff's claim. Also, there is no evidence in the case showing what the effect of a holding of arbitrariness or unreasonableness with respect to the break in service provision would be on the actuarial soundness of the plan or what effect it would have upon the obligations of the trustees of the national fund under the merger agreement of January 12, 1970 pursuant to which they assumed the obligations and liabilities of the Local 424 Fund. The Local 424 Fund was financed solely by contributions from the employers and participants made no contribution toward the costs of pension. However, the contributions were made in accordance with the Collective Bargaining Agreement and therefore the question of lack of contributions by the employees toward this fund which was secured in such a bargaining agreement is not important.

*Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972) also holds that where the trust is solely funded by employers' contributions, denial of benefits can reasonably be rested upon an insufficiency of years of employment regardless of the reason. It was pointed out that under *Stasukonis v. Kennedy*, 387 Pa. 216, 127 A.2d 678 (1956) where an employee even through no fault of his own is prevented from completing a minimum period of employment he may be denied a pension. The *Nesbitt* court then, however, went on to state:

"[2] However, that is not this case. As indicated earlier—in footnote 2—by 1955, Lee had earned and was entitled to at least 15 years credits, having worked prior to that time without interruption.

He was thus eligible for a pension on that date, save for the fact that he had not reached the age of retirement."

■ This court agrees with *Lee v. Nesbitt* that in this particular case where plaintiff Knauss had under the Local 424 plan more than completed the 20 years of credited service required (P. 3 Ex. 1) albeit only 5 years after adoption of the plan, it would seem unfair to deprive him of such credits after they had been attained and to require when he resumes work with a covered employer that he continue to work until retirement and even then could not secure the necessary credits. This, however, does not constitute a structural defect in the plan under the cases above cited where only a claim by a single beneficiary is involved. It should be remembered that under the merger agreement (Ex. 4) all of the assets property and rights of every kind of the trustees of the Local 424 fund were conveyed to the trustees of the national fund and became part of their assets. The merger by its terms involved a reduction to 75% of the amount of benefits and there appears to be no contest over this provision. At this time the assets derived from contributions by the employer of Knauss for 5 years prior to the time of his involuntary separation from employment in 1962 had merged with and become a part of the assets of the national fund. It may be assumed that all these considerations were taken into account and actuarial calculations were made on the basis of the Local 424 plan as it then existed which plainly excluded Knauss from coverage because of break in service. Under such circumstances, this court should not formulate a new plan for the parties in order to award a pension to a worker who plainly is not covered. Judgment must therefore be entered for the defendants.

The foregoing contains the findings of fact required by Rule 52(a).