In re FIDELITY AMERICA FINANCIAL CORPORATION.

In re FIDELITY AMERICA MORTGAGE CO. (A Pennsylvania Corporation) Debtor.

In re FIDELITY AMERICA MORTGAGE CO. (A Delaware Corporation) Debtor.

In re FIDELITY AMERICA MORTGAGE CO. (A Nevada Corporation) Debtor.

Bankruptcy Nos. 81–00385G to 81–00388G.

United States Bankruptcy Court, E.D. Pennsylvania.

April 24, 1985.

Neal D. Colton, Dechert, Price & Rhoads, Philadelphia, for FAMCO Mortg. Secured Noteholders' Creditors' Committee.

Alexander B. Rubin, Jr., Rubin, Quinn & Moss, Philadelphia, for Norman M. Kranzdorf, trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge.

The bone of contention in the case at bench is whether we should reconsider and vacate our order denying attorneys' fees to counsel for the Creditors' Committee of Mortgage Secured Noteholders ("the Noteholders' Committee"). We appointed such committee but the district court, on appeal, vacated our order. Counsel for the Noteholders' Committee then applied for a fee which we rejected. We are now asked to reconsider that rejection. For the reasons outlined below, we will deny the motion for reconsideration.

The facts of this case were narrated in our opinion *In Re Fidelity America Financial Corp.*, 46 B.R. 181 (Bankr.E.D.Pa. 1985) but, for the sake of clarity we recapitulate most of the facts here:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") and, as mandated by § 1102(a) we appointed a committee of creditors holding unsecured claims ("the Unsecured Committee"). A creditor, one Horace Godshall ("Godshall"), held certain documents of debt issued by the debtor which were denominated "mortgage secured notes". Based on these notes, Godshall believed that his interest in the debtor's estate differed materially from the interests of the unsecured creditors represented by the Unsecured Committee. Predicated on this belief, Godshall contacted Neal D. Colton ("Colton"), of the law firm of Dechert, Price & Rhoads, for representation. Accordingly, Colton convened a meeting of other holders of mortgage secured notes who agreed that Colton should represent them. On hearing of Colton's representation of the noteholders, the Unsecured Committee notified those holders that their so-called mortgage secured notes were, in fact, unsecured and, thus, being unsecured creditors, they were being represented by the Unsecured Committee. Notwithstanding this notification, Godshall moved for court approval of the Noteholders' Committee, to which the Unsecured Committee objected. We overruled the objection and entered an order officially sanctioning the Noteholders' Committee. Colton then applied for appointment as counsel for that committee and we granted his request. The Unsecured Committee thereupon appealed our order appointing the Noteholders' Committee and the district court vacated our order and remanded the matter to us on the basis that the record did not reflect that the appointment of such committee was "necessary to assure adequate representation of" the noteholders constituting that committee. The district court stated that such a finding must be made in light of "both the desirability of providing such protection, and the desirability of avoiding undue additional expense to the estate." *In Re Fidelity America Mortgage Co.*, 82–1959, slip op. at 5 (E.D.Pa. Aug. 23, 1982).

Several months later Colton moved in this court on behalf of the Noteholders' Committee for the withdrawal of its representation of that committee and also moved for the merger of said committee with the Unsecured Committee. By this point Colton had apparently concluded that the mortgages securing the noteholders' bonds

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

were not recorded. Colton then applied for the allowance of counsel fees and expenses incurred in his representation of the Note-holders' Committee. This we denied and Colton asks us to reconsider.

Colton's bases for reconsideration are: the clerk's office was derelict in not promptly processing the appeal from our order establishing the committee; no stay of that order was sought; and, during the pendency of the appeal, Colton continued to render legal services which were not duplicative of those performed by other counsel.

■ Summarizing the law underlying our original order and opinion, "[i]t is a well-settled general principle that an attorney must look to his own client alone for payment for his services, and this principle is applicable in bankruptcy matters as well as in others..." 6 *Remington on Bankruptcy* ¶ 2665 (5th ed. 1952). Nonetheless, an attorney may be compensated from the bankruptcy estate where the Code expressly or by clear implication authorizes allowance out of that estate. *Id.* Happily for bankruptcy lawyers the Code expressly allows for the award of attorneys' fees when there is an order appointing them. *See,* *e.g.,* 11 U.S.C. §§ 327, 330, 1103. The cases are legion in which bankruptcy courts have denied compensation to counsel due to the latter's failure to obtain court approval prior to the rendition of counsel's services, although it is often undisputed that the attorney acted in good faith in performing valuable services for the bankruptcy estate. *See,* 2 *Collier on Bankruptcy* ¶ 330.-04[2] at p. 330–11 (15th ed. 1984) (collecting cases). The tenor of these cases is captured in the following quote from the United States Court of Appeals for the Second Circuit:

> There is no question but that [counsel] acted throughout in good faith and a denial to him of compensation is a harsh conclusion. However, the law is unquestionably settled that the order of the district court was correct. In the case of *In re Eureka Upholstering Co.,* 2 Cir., 48 F.2d 95 the attorney for the petitioning creditors rendered valuable services

to the receiver in bankruptcy; it was held, however, that having failed to secure formal appointment under General Order 44 no compensation could be recovered irrespective of benefit to the estate. A similar ruling appears in *Re Rogers-Pyatt Shellac Co.,* 2 Cir., 51 F.2d 988 and in *Re H.L. Stratton, Inc.,* 2 Cir., 51 F.2d 984, *certiorari denied sub nom.* *Jonas & Neuburger v. General Motors Acc. Corp.,* 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576. *See also Weil v. Neary,* 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243; *In re Robertson,* 3 Cir., 4 F.2d 248. To recover compensation from the estate for services rendered to the trustee an attorney must receive appointment under General Order 44.

*In Re Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir.1941).

■ In the absence of an order appointing an attorney, the courts at times have allowed fees when counsel's actions have generated a common fund or benefited the estate. Under this method of compensation the attorney is not awarded fees on the value of reasonable services provided as would be allowable under § 330, but rather compensation is limited by value of the benefit inuring to the estate. This theory of compensation is often called the "common fund" rationale. Under this rubric the attorney bears the burden of establishing the value of the benefit flowing to the estate through his labor. In the absence of any proof on the matter, no fees can be awarded. As stated by the United States Court of Appeals for the Second Circuit, "The courts have been extremely reluctant to apply the 'common fund' rationale, *see e.g. Trustees v. Greenough* [15 OTTO 527], 105 U.S. 527, 26 L.Ed. 1157 (1881); *Kopet v. Esquire Realty Co.,* 523 F.2d 1005 (2d Cir.1975). ..." *In Re American Express Warehousing, Ltd.,* 525 F.2d 1012, 1015 (2d Cir.1975). As applied to the case at bench, Colton has failed to introduce any evidence on the value of his services to the estate, and thus no fee may be awarded under the common fund doctrine.

When the first theory discussed above is applied to the facts of the dispute before us, the same result is reached. There is no extant order appointing the Noteholders' Committee. Although such an order was initially entered by us, it was vacated on appeal. As such we see no essential distinction between the theory underlying our decision here and the principle that no fees may be awarded under § 330 unless a valid order of appointment is entered under §§ 327 or 1103.

At this point Colton yields to the introduction of a legal red herring. He asserts that we wrongfully denied his application for fees in full because we found his request excessive. In support he cites a footnote in our opinion in which we stated:

> 3. In its application Dechert requests $31,962.00 in fees and $429.67 in expenses. For such sums Dechert reached the conclusion that the mortgages securing the debtor's notes were not recorded.

46 B.R. at 182 n. 3. Although we found it shocking that Colton could request fees in excess of $31,000.00 for what would ostensibly require a paralegal's trek to the county court house, our decision was not based on the unreasonableness or excessiveness of the fee request. Simply stated, our reason for denying the fee application was this: there was no valid, outstanding order appointing the committee Colton was representing. Such an order being mandatory, and our order being declared invalid, no fee can be awarded.

Lest pangs of remorse grip the weak hearted among us, we note that Colton is a partner in one of the largest law firms in Philadelphia. He has practiced law for 14 years and regularly appears before us in bankruptcy court. He is surely no babe in the bankruptcy woods. He continued representing the Noteholders' Committee after a notice of appeal was filed to our order sanctioning the existence of that committee. He proceeded with the knowledge that that order might be reversed on appeal, and he consciously accepted that risk in continuing to perform further services for the committee.

We will accordingly enter an order denying the motion for reconsideration.