743 F.2d 129
 Jay H. KOPPEL, Plaintiff-Appellant-Cross-Appellee.
v.
Lawrence A. WIEN, Alvin S. Lane, and Wien, Lane & Malkin,
Defendants-Appellees-Cross-Appellants.
Mary GREENBAUM, Plaintiff-Appellant-Cross-Appellee.
v.
Lawrence A. WIEN, Alvin S. Lane, and Wien, Lane & Malkin,
Defendants-Appellees-Cross-Appellants.
 Nos. 1204, 1337, Dockets 83-9073, 84-7013.
 United States Court of Appeals,
Second Circuit.
 Argued June 4, 1984.
Decided Aug. 24, 1984.
 
 Edward Labaton, New York City (Joseph Sternberg, Kass, Goodkind, Wechsler & Labaton, Alan E. Bandler, New York City, on brief), for plaintiffs-appellants-cross-appellees.
 Jamie B.W. Stecher, New York City (Stecher, Jaglom & Prutzman, Robert L. Laufer, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on brief), for defendants-appellees-cross-appellants.
 Before OAKES and NEWMAN, Circuit Judges, and MISHLER, District Judge.*
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 The principal issue on this appeal is whether a lawsuit to prevent a proposed adverse modification of an agreement defining rights of participants in a real estate venture may entitle the plaintiffs to recover their attorney's fees for having conferred a benefit on the participants. The issue arises on an appeal from a judgment of the District Court for the Southern District of New York (Kevin T. Duffy, Judge). Koppel v. Wien, 575 F.Supp. 960 (S.D.N.Y.1983). That judgment, entered in two consolidated lawsuits brought by plaintiffs-appellants Jay H. Koppel and Mary Greenbaum, dismissed a second amended complaint and confirmed an earlier order denying plaintiffs an award of attorney's fees. The suit was brought against defendants-appellees Lawrence A. Wien and Alvin S. Lane and their law firm, Wien, Lane & Malkin. Defendants cross-appeal, asserting their entitlement to an award of defendants' attorney's fees for their successful motion to dismiss the second amended complaint. On the cross-appeal we affirm the ruling denying defendants' claim for attorney's fees; on the main appeal we hold that a substantial benefit sufficient to support an award of plaintiffs' attorney's fees was conferred upon the participants in the partnership and remand for an evidentiary hearing to determine whether that benefit was caused by the litigation.
 
 Facts
 
 2
 In August 1961, defendant-appellee Lawrence A. Wien and Harold L. Strudler, the predecessor in interest of defendant-appellee Alvin S. Lane, formed a general partnership, the St. Moritz Hotel Associates ("SMHA"), for the purpose of acquiring the St. Moritz Hotel, a prestigious hotel located on Central Park South in New York City, and a long-term ground lease for the land on which the hotel is located (jointly referred to as "the property"). Wien and Strudler, the general partners of SMHA, raised most[1] of the $4.8 million necessary to acquire the property through the sale to the general public, including plaintiffs, of participation interests in their respective 50% partnership interests in SMHA.
 
 
 3
 Under the terms of the participation agreement, all participants, including the current general partners, Wien and Lane, are to share ratably in the earnings and liquidation of the property. Paragraph 3 of the agreement specifically stipulates that:
 
 
 4
 All profits and losses arising from the ownership of The Property shall be shared by the Participants in proportion to their respective fractional interests.
 
 
 5
 The agreement does not provide for profit participation by the general partners' law firm, Wien, Lane & Malkin ("WLM"). Since the formation of SMHA, however, WLM has received an annual fee as specified under a contract agreed to by all participants as compensation for WLM's managerial and legal services. Under this contract, WLM was to receive $32,000 in 1981 plus 10% of the annual distribution in excess of $672,000.
 
 
 6
 In 1981, Wien began to explore the possibility of selling the property and liquidating the partnership. Since Wien and Lane would not share in the proceeds of such a sale beyond a pro rata distribution based on their equity investment, Wien proposed to the participants, on November 6, 1981, a modification of the participation agreement that would give WLM, upon the sale of the property, one-third of the amount realized in excess of $14.4 million (three times the original cost of the property). The letter warned that, as provided in the participation agreement, in the event that 80% of the participants ratified the proposed amendment, dissenting participants would be forcibly bought out at the lesser of the appraised value of the participation unit or the much lower book value, $2,068 per $10,000 participation unit.
 
 
 7
 Two weeks later, on November 19, 1981, Koppel, a participant in SMHA, filed suit to block the proposed amendment. Plaintiff moved for a temporary restraining order ("TRO") and a preliminary injunction to enjoin defendants from continuing their solicitation. The complaint alleged that the solicitation was impermissibly coercive, that its buy-out proposal was contrary to the partnership agreement, and that it contained various other misstatements and omissions, in violation of the federal securities laws, sections 10(b) and 14(a) of the 1934 Act, 15 U.S.C. Secs. 78j(b), 78n(a) (1982), and of state law fiduciary obligations. As relief Koppel sought to have defendants enjoined from further defective solicitations and from acting upon consents obtained to buy out non-consenting participants, and to have a receiver appointed in place of defendants.
 
 
 8
 One week later, on November 25, WLM sent non-consenting participants a second letter advising them that 60% of the participants had agreed to the proposed modification and cautioning that non-consenting participants would be bought out if 80% approved the change. This second solicitation did not mention that plaintiff had commenced this action to block the proposed amendment. And, although defendants filed the first solicitation with the Securities and Exchange Commission ("SEC"), they did not submit the second letter to the Commission.
 
 
 9
 On December 3, Judge Duffy held an initial hearing on plaintiff's request for a TRO. Judge Duffy declined to enter a TRO only after eliciting defendants' representation that they would maintain the status quo at least until December 16, the date the Court set for the preliminary injunction hearing. More specifically, defendants represented that no action would be taken on the consents obtained--that "nobody will be bought out."
 
 
 10
 At the preliminary injunction hearing, defendants requested an adjournment in order to allow time to prepare "curative" disclosures and "corrective" solicitations and to obtain SEC clearances. Based on defendants' continued representation that they would "not act on any of the current consents," Judge Duffy granted the adjournment.
 
 
 11
 Defendants did not pursue their proposed course of action. Rather than distribute a revised solicitation, they withdrew the proposed modification. By letter dated January 20, 1982, Wien informed participants that, although the consent of more than 80% had been obtained, he was withdrawing the proposed amendment and rescinding the participants' approval because he did "not wish to force anyone to pay additional compensation" to himself or WLM. The letter also stated that at some future date defendants might request that participants voluntarily and individually "approve a sharing by [Wien or WLM] in the profits which may be realized on a sale of the hotel." The letter added that "such approval will be entirely voluntary on the part of each participant and no participant will be forced to pay any compensation to [Wien or WLM] beyond normal legal fees and disbursements in connection with a sale."
 
 
 12
 Following the January 20 letter, defendants moved to dismiss the action on the grounds that the withdrawal of the proposed modification mooted the federal claims and that the Court lacked subject matter jurisdiction over the pendent state law claims. Plaintiff resisted dismissal, arguing that injunctive relief was necessary to ensure that defendants did not engage in similar efforts in the future or commit further violations of the securities laws. Plaintiff cross-moved for leave to file a second amended complaint and for an award of attorney's fees against defendants or SMHA for the benefit conferred upon all participants by causing Wien to withdraw the proposed modification.
 
 
 13
 In opposing the request for plaintiffs' attorney's fees, defendants argued that plaintiff's suit played no role in their decision to abandon the solicitation. Wien submitted an affidavit asserting that he "decided to withdraw the proposal ... totally independent of any concern about the pending lawsuits" because "as many as 15 of the Participants objected." Wien maintained that he "honestly believed that virtually all of the Participants ... would agree" to the modification and that he did not want to force anyone to accept the proposal. Koppel asserted that Wien's explanation is inconsistent with defendants' actions since the solicitation did not need unanimous consent and since non-consenting participants were threatened with divestment on unfavorable terms.
 
 
 14
 Prior to the District Court's ruling on the pending motions, Wien wrote to the participants in May 1982 to seek their agreement to sell the property for a minimum of $25 million ($52,083 per participation unit). More than 94% of the participants consented. On August 20, 1982, Wien wrote to the participants who had previously agreed to the proposed modification, asking each participant voluntarily to give defendants his pro rata share of one-third of the amount realized from the sale of the property in excess of $14.4 million. According to Wien, nearly 70% of the participants eventually agreed to this request.
 
 
 15
 On July 23, 1982, prior to the submission of all papers on the pending motions, the District Court prematurely ruled on the motions, dismissing as moot Koppel's suit and a similar suit filed by plaintiff Greenbaum. Judge Duffy also denied Koppel's cross-motion to amend and to obtain attorney's fees. The Court's explanation for its refusal to award fees was as follows:
 
 
 16
 The motion by Koppel's attorneys for counsel fees to be assessed either against the defendants or the partnership owning the hotel also must be denied. This is not a situation where a clear benefit has been obtained for a class, nor a fund created, nor even a situation where there has been a showing that the defendants did something morally, ethically or legally wrong. Accordingly, the American rule that each party to a lawsuit must bear responsibility for attorneys fees and costs (Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980)) must apply.
 
 
 17
 (Emphasis added).
 
 
 18
 Since judgment had entered on the Court's July 23 ruling, Judge Duffy proposed to correct the premature aspect of his ruling by treating plaintiffs' reply papers as a motion to reargue. On October 28, 1982, the Court adhered to its initial decision dismissing the complaints and denying attorney's fees, noting that "[p]laintiffs have presented no additional evidence ... warranting a change in my previous conclusion." The Court granted leave to Koppel and Greenbaum to file a supplemental complaint, based on developments occurring after their initial complaints. Leave to file was granted without assessing the sufficiency of the proposed supplemental pleading.
 
 
 19
 Plaintiffs then filed a consolidated second amended complaint in which they attacked the adequacy of the disclosures in the May 24 and August 20 letters, repeated their challenge to the withdrawn proposal, and charged breaches of state law fiduciary obligations. On November 16, 1983, the District Court granted defendants' motion to dismiss, holding that plaintiffs had failed to state a claim under either sections 10(b) or 14(a) of the 1934 Act. The Court denied defendants' request for attorney's fees incurred in presenting their motion to dismiss the second amended complaint.
 
 
 20
 On appeal, plaintiffs assert that Judge Duffy erroneously denied them attorney's fees for the benefit obtained for all SMHA participants; defendants claim error in the Court's refusal to award defendants' attorney's fees. More specifically, plaintiffs contend that a significant benefit was achieved for all SMHA participants and that their lawsuit was a substantial cause of that benefit.
 
 Discussion
 
 21
 We disagree with Judge Duffy's conclusion that no benefit was conferred on the SMHA participants. The value of the participation units surely was preserved over what the value would have been if the proposed modification had been adopted. Had defendants succeeded in changing the participation agreement to make one-third of sale proceeds over $14.4 million payable to WLM, this contingent liability would have had the effect, as defendants conceded in their disclosures, of reducing the liquidation value of the participation rights. At a sale price of $25 million, the value of each $10,000 unit of rights would drop from $52,000 to $45,000. Since the participation unit's fair market value reflects, at least in part, the liquidation value, an immediate consequence of the modification, even before any sale of the property, would have been to lower the fair market value of the participation rights.
 
 
 22
 Contrary to defendants' contention, it is irrelevant to plaintiffs' entitlement to attorney's fees that no sale of the property has yet been consummated and consequently that the amount of the benefit conferred may not be precisely ascertained. While the extent of the benefit may be relevant to the determination of the amount of fees properly chargeable, the right to a fee award depends only on the existence of a benefit. Nor is it the case, as defendants urge, that attorney's fees are not recoverable until participants actually receive a tangible benefit. The avoidance of contingent liabilities or the creation of contingent benefits triggers an immediate right to attorney's fees. See, e.g., Barton v. Drummond Co., 636 F.2d 978, 982-83 (5th Cir.1981) (avoidance of unfair merger); Denney v. Phillips & Buttorff Corp., 331 F.2d 249, 250-51 (6th Cir.1964) (rescission of self-dealing transaction); Milstein v. Werner, 58 F.R.D. 544 (S.D.N.Y.1973) (benefit only if stock options exercised in future).
 
 
 23
 Nor is it fatal to plaintiffs' fee claim that 70% of the participants voluntarily "returned" the benefits obtained by plaintiff's counsel, in effect negating part of the value of counsel's efforts. It is immaterial to an award of attorney's fees whether beneficiaries claim or accept the benefits obtained on their behalf, Van Gemert v. Boeing Co., 590 F.2d 433, 439-41 (2d Cir.1978) (in banc), aff'd, 444 U.S. 472, 479-81, 100 S.Ct. 745, 749-50, 62 L.Ed.2d 676 (1980); equity demands that they share the costs of obtaining the objective benefit secured. Nor does it necessarily follow that those who "returned" the benefit do not consider the withdrawal of the proposed amendment to be a benefit. By acting voluntarily these participants may hope to bolster their business relationship with defendants and to receive compensating benefits in other dealings. Even if 70% rejected the benefit obtained without regard to this lawsuit, plaintiffs would be entitled to fees because of the benefits secured for the remaining 30%. See Kopet v. Esquire Realty Co., 523 F.2d 1005 (2d Cir.1975) (fees may be "predicated on the conferral of benefits which are neither monetary in nature nor explicitly sought on behalf of an entire group" (citing Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)).
 
 
 24
 Nor is it a barrier to recovery that no fund was contemporaneously created by plaintiffs' action. At best, the absence of a fund will delay but not defeat plaintiffs' right to fees. The fee award could be imposed as a charge or lien on the property, with payment made from the proceeds of its sale. See, e.g., City of Klawock v. Gustafson, 585 F.2d 428, 430-31 (9th Cir.1978) (fees a first charge on land recovered through action); Vincent v. Hughes Air West, Inc., 557 F.2d 759, 770-73 (9th Cir.1977) (5% lien against individual settlements in mass disaster imposed to compensate for benefits obtained from lead counsel's efforts); Milstein v. Werner, supra, 58 F.R.D. at 551 ($500,000 in fees awarded for contingent benefit realizable only if certain stock options exercised in future; $300,000 to be paid immediately, balance when benefits actually realized). More frequently, however, fees are currently awarded based on future benefits where a mechanism exists for distributing the costs of obtaining the benefits proportionately among the benefitted class. A corporation, a union, or, as here, a partnership is such a cost-spreading mechanism. While it is generally preferable to vindicate a plaintiff's right to a fee award fully and immediately, we leave to the District Court consideration of whether it is appropriate to postpone recovery until such time as the property is sold.[2]
 
 
 25
 Even if defendants had established the absence of a tangible monetary benefit, the non-monetary benefits resulting from plaintiffs' suit would fully justify a fee award. It is well established that non-monetary benefits, such as promoting fair and informed corporate suffrage, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 396-97, 90 S.Ct. 616, 627-28, 24 L.Ed.2d 593 (1970), or deterring future misconduct by management, Kopet v. Esquire Realty Co., supra, may support a fee award.
 
 
 26
 It is also clear that an award of plaintiffs' attorney's fees is not precluded because no judgment or consent decree was entered and the complaint was dismissed as moot. Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained. See, e.g., Lewis v. Anderson, 692 F.2d 1267, 1270 (9th Cir.1982) (dismissal does not preclude fee award where stock option plan resubmitted to and approved by shareholders following full disclosure prompted by litigation); Kopet v. Esquire Realty Co., supra, 523 F.2d at 1008 (fees allowable without adjudication on merits).
 
 
 27
 Because of the erroneous ruling that no benefit had been conferred on the participants, the District Judge made no finding as to whether plaintiffs' suit was a proximate cause of the benefit obtained. Plaintiffs make a strong showing that the undisputed facts establish causation. Contrary to defendants' explanation, the proposal was not withdrawn when dissents were received but only after the commencement of this litigation. Plaintiffs' undisputed facts as to the sequence of events almost entitle them to summary judgment on the issue of causation.[3] Nevertheless, we cannot say that plaintiffs are entitled to the entry of judgment in their favor. The causal connection between plaintiffs' suit and defendants' decision to withdraw the proposed modification ultimately turns on Wien's state of mind. Though the inference of causation is strong, motive is normally a matter for determination by the finder of fact. We therefore remand to the District Court for a hearing to determine whether plaintiffs' suit was a substantial cause of the benefit obtained by the SMHA participants.
 
 
 28
 At the evidentiary hearing, defendants will bear the burden of production and persuasion on the issue of causation. Where, as here, plaintiffs' lawsuit is mooted by defendants' corrective action, the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees. See McDonnell Douglas Corp. v. Palley, 310 A.2d 635 (Del.1973) ("where a stockholder's derivative suit has been rendered moot by subsequent action of the defendant, the latter has the burden of showing no causal connection") (citing Rosenthal v. Burry Biscuit Corp., 209 A.2d 459 (Del.Ch.1949)); Barton v. Drummond Co., supra, 636 F.2d at 984-85 (applying Delaware law).
 
 
 29
 Although plaintiffs' motion for attorney's fees requested payment from Wien and Lane, presumably in their capacity as general partners and as agents for the participants, as well as from WLM and SMHA, the real estate partnership has not yet been formally joined as a party. Perhaps a fee award against Wien and Lane as general partners and agents would result in a pass-through of such litigation costs to all the participants. The better course, however, would be to impose any award directly upon SMHA. Cf. Barton v. Drummond Co., supra, 636 F.2d at 985. We intimate no view on whether SMHA, if found liable for a fee award, may in turn claim over against Wien and Lane, or WLM.
 
 
 30
 Defendants' cross-appeal seeking their attorney's fees for obtaining dismissal of the second amended complaint is totally without merit. There is no "clear evidence" that the claims advanced are "entirely without color," i.e., without legal and factual support considered in light of the "reasonable beliefs of the individual making the claim." Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir.1980). Nor is there a finding of plaintiffs' bad faith in seeking to amend their complaint. Judge Duffy properly denied defendants an attorney's fee. See Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977).
 
 
 31
 Reversed and remanded as to the appeal; affirmed as to the cross-appeal.
 
 
 
 *
 The Honorable Jacob Mishler of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Wien and Lane's equity participation is limited to 1.2% of the original cash investment. Defendants own beneficially $35,000 in participation interests and hold, as trustees for others, $25,000 of such interests
 
 
 [2]
 The lack of an immediate fee award need not result in less than full compensation if the Court provides for interest on any delayed fee award
 
 
 [3]
 As the Eighth Circuit has observed, "The chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to plaintiffs' lawsuit." United Handicapped Federation v. Andre, 622 F.2d 342, 347 (8th Cir.1980). See also City of Klawock v. Gustafson, supra (change in administrative policy could not have been "spontaneous;" causation inferred)