Charles S. **CHRISTENSEN** and Jenne Christensen, Joint Tenants; Altie L. Clark and Lena F. Clark, Joint Tenants; John C. Echon, individually and as Joint Tenant with Lillian Echon; James M. Hoss, Jr., and Marian C. Hoss, Joint Tenants; Henry B. Hoss; David C. Kriser; Pennsylvania National Mutual Casualty Insurance Company, Plaintiffs-Appellants,

v.

**KIEWIT–MURDOCK INVESTMENT CORPORATION, Peter Kiewit Sons, Inc., Pacific Holding Corporation, KMI Continental Inc., the Continental Group, Inc., S. Bruce Smart, Jr., David H. Murdock, Raymond F. Henze, III, Walter Scott, Jr., Donald L. Sturm, Defendants-Appellees.**

No. 814, Docket 86–7964.

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1987.

Decided March 26, 1987.

Feinberg, Chief Judge, filed dissenting opinion.

Edward L. Sadowsky, New York City (William Klein, II, Ira A. Finkelstein, Judah S. Shapiro, and Tenzer, Greenblatt, Fallon & Kaplan, New York City; Richard S. Lipman, and Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., on the brief), for plaintiffs-appellants.

Daniel J. Beller, New York City (Kevin McNulty, and Paul, Weiss, Rifkind, Wharton & Garrison, New York City; Stuart Bear, Paul F. Thomas, and Zeldes, Needle & Cooper, Bridgeport, Conn., on the brief), for defendants-appellees.

Before FEINBERG, Chief Judge, TIMBERS and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants Charles S. Christensen and others ("appellants") appeal from that part of a judgment entered November 14, 1986 in the District of Connecticut, Ellen Bree Burns, District Judge, which denied their application to recover attorneys' fees and costs from appellee Kiewit-Murdock Investment Corporation ("Kiewit Corp."). The judgment also dismissed as moot appellants' action under the federal securities laws and New York State common law; appellants do not appeal from that part of the judgment.

Appellants' action arose out of a merger of appellee The Continental Group, Inc. ("Continental") into a subsidiary of Kiewit Corp., forming appellee KMI Continental Inc. ("KMI Continental"). Appellants held certain classes of Continental stock prior to the merger. Under the terms of the merg-

er, appellants received stock of KMI Continental in exchange for their Continental stock. Holders of other classes of Continental stock received cash.

In their amended complaint, appellants alleged that the financial structure of the merger had left KMI Continental so debt-ridden that their KMI Continental stock was of lesser value than had been their Continental stock. Appellants sought an order compelling appellees Kiewit Corp. and others ("appellees") to redeem all outstanding KMI Continental stock.

After appellants filed their amended complaint, they moved in the district court for certification of a plaintiff class consisting of the holders, and their successors, of the Continental stock that had been exchanged for KMI Continental stock. The district court reserved decision on that motion pending disposition of appellees' motions to dismiss the amended complaint.

Before oral argument on appellees' motions to dismiss and without notifying the court, Kiewit Corp. acquired a substantial majority of KMI Continental stock through a tender offer. Appellants pressed their motion in the district court to dismiss their action as moot, asserting that the tender offer conferred on the class substantially the same relief which had been sought in the amended complaint. Appellants also applied to the court for an award to appellants of their attorneys' fees and costs to be paid by Kiewit Corp.

In a well reasoned opinion filed October 10, 1986, the district court granted appellants' motion to dismiss their action as moot, but denied their application for attorneys' fees and costs.

On appeal from the denial of their application for attorneys' fees and costs, appellants recognize that under the "American Rule" litigants ordinarily pay their own attorneys' fees. They claim, however, that three exceptions to that rule apply to the instant action. They claim, first, that they are entitled to attorneys' fees and costs under the "common fund" doctrine; second, that the "bad faith" exception applies to the instant action because Kiewit Corp's tender offer constituted a "flagrant avoidance" of Fed.R.Civ.P. 23(e), which bars dismissal or compromise of class actions without court approval; and third, as an afterthought on appeal, that they should be permitted to recover attorneys' fees from Kiewit Corp. under a New York statute.

We hold, first, that the common fund doctrine does not apply to the instant action because appellants seek fees and costs from Kiewit Corp., not from any "fund" or from those persons who purportedly have benefited from appellants' law suit; second, that appellants are not entitled to fees and costs under the "bad faith" exception because Kiewit Corp.'s tender offer did not constitute a violation of Rule 23(e); and, third, that appellants' claim under the New York statute, first asserted on appeal, is not properly before this Court because appellants did not assert that claim in the district court.

We affirm.

## I.

The facts are straightforward and not in dispute. We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Continental was a publicly held diversified corporation engaged primarily in the business of packaging, insurance, forestry products, and energy. In Spring 1984, Continental became the target of a corporate takeover. One of the bidders was Kiewit Corp., now known as Kiewit Investment Corporation. On June 29, 1984, Continental's Board of Directors voted to accept Kiewit Corp.'s offer of a $2.9 billion leveraged buy-out. Under a merger agreement entered into the same day, Continental was to merge into a subsidiary of Kiewit Corp., forming KMI Continental. The merger agreement set forth the consideration to be given for each class of Continental stock. Holders of Continental common stock and Series A and B preference stock were to be paid cash in exchange for their shares; holders of Continental preferred stock ("Continental preferred") and Series C preference stock ("Continental Series C") were to receive, respectively, KMI Conti-

nental preferred stock ("KMI preferred") and Series C preference stock ("KMI Series C").

The instant action was commenced on September 21, 1984. On September 26, Continental's shareholders voted overwhelmingly to approve the merger. It was consummated on November 1.

After proceedings not relevant to the instant appeal, appellants filed an amended class action complaint on January 22, 1985. Appellants are holders of either KMI preferred or KMI Series C, having received those shares in exchange for Continental preferred and Continental Series C as a result of the merger.

The amended complaint named as corporate defendants ("the corporate appellees"), in addition to the appellees heretofore described, appellees Peter Kiewit Sons, Inc., and Pacific Holding Corporation, which own, respectively, 80% and 20% of Kiewit Corp. Appellee S. Bruce Smart, Jr., ("Smart") was Chairman of the Board of Directors of Continental and its Chief Executive Officer on June 29, 1984—the date Continental's Board voted to accept Kiewit Corp.'s offer. Appellees David H. Murdock, Raymond T. Henze, III, Walter Scott, Jr., and Donald R. Sturm ("the KMI Board appellees") were appointed to Continental's Board of Directors, and became members of KMI Continental's Board, pursuant to the merger agreement.

The amended complaint alleged among other things that appellees' "failure to cash out the [Continental] Series C and the Preferred, as they were cashing out the [Continental] Common Stock, the Series A and the Series B ... [s]ubmerge[d] the Series C and the Preferred into the privately owned KMI Continental, with debt so great that its credit rating would be far lower and far more speculative than Continental's." (Appellants described their claim in a mixed metaphor in their brief in this Court: "These stockholders were left to twist slowly in the breeze, while the company was being dismantled around them.") Appellants claimed that the financial structure of the merger constituted both a breach of fiduciary duty under New York State com-

mon law and a manipulative scheme or device to defraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986). The amended complaint sought among other things an order compelling appellees to redeem all KMI preferred and KMI Series C at, respectively, $110 and $53.50 per share.

On January 30, 1985, appellants moved in the district court under Fed.R.Civ.P. 23(a), (b)(1), and (b)(2), to certify a class consisting of the beneficial owners on June 29, 1984 (the date of the merger agreement), and their successors, of Continental preferred and Continental Series C. By an order filed March 8, 1985, the court reserved decision on the certification motion, believing that "defendants' motion to dismiss should be addressed first."

In a motion filed July 3, 1985, the corporate appellees and the KMI Board appellees moved in the district court to dismiss the amended complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and for failure to plead fraud with particularity, Fed.R.Civ.P. 9(b). Smart filed similar motions on August 12 and September 16, 1985.

On September 3, 1985, the court granted a motion by appellees to stay discovery pending disposition of their motions to dismiss.

Appellants filed a memorandum and affidavits in opposition to the motions to dismiss on September 19, 1985.

On October 1, 1985, Kiewit Corp. commenced a tender offer for all of the outstanding shares of KMI preferred and KMI Series C, at, respectively, $55.50 and $45.00 per share. Appellees did not notify the court that Kiewit Corp. was commencing the tender offer. The Offer to Purchase submitted to KMI Continental shareholders in connection with the tender offer provided full disclosure of the instant action.

In a letter to appellants dated October 18, 1985, their counsel stated that "[i]f you tender your Series C and Preferred shares, we will of course, as Plaintiffs' counsel in the class action litigation, argue as effec-

tively as we can that you have not lost your right to assert claims in that action."

As a result of the tender offer, Kiewit Corp. acquired a substantial majority of KMI preferred and KMI Series C.

The district court heard oral argument on appellees' motions to dismiss on December 9, 1985. At the conclusion of a lengthy presentation on behalf of appellees, appellants' counsel announced that appellants were making a motion in the district court to dismiss the action as moot since the tender offer provided the class with relief "substantially equivalent" to that sought in the amended complaint. In papers in support of their motion to dismiss filed January 8, 1986, appellants argued that "notice of dismissal is not required by Rule 23".

Appellants applied to the district court on March 11, 1986 for an award of attorneys' fees and costs in the amount of $3,575,699, to be paid by Kiewit Corp. The court heard oral argument on that application on May 13, 1986.

In its opinion filed October 10, 1986, the court granted appellants' motion to dismiss the action as moot, but denied their application for fees and costs. After a careful analysis, the court rejected appellants' claim for fees and costs under the common fund doctrine and the bad faith exception. The court did not address appellants' claim under the New York statute because appellants did not make that claim in the district court.

From the judgment entered on the court's opinion, the instant appeal was taken. In their notice of appeal appellants stated that they were appealing "from the final judgment entered in this action on October 10, 1986, from the Order staying plaintiffs' motion for class action certification, from the Order staying all discovery by the plaintiffs, and from all other Orders decided adversely to plaintiffs in this action." We treat appellants' appeal from the "final judgment" as being from the judgment entered November 14, 1986. Further, we treat the appeal from the final judgment as being only from that part of the judgment denying appellants' application for fees and costs, as it is clear from

appellants' brief and oral argument in our Court that they do not challenge the dismissal of their action as moot. As to the appeal from the order staying decision of appellants' motion for class certification, we review the propriety of that order on the appeal from the final judgment. As for the appeal from the order staying discovery and "from all other Orders ...", appellants have made no claims regarding those orders in our Court.

For the reasons stated below, we affirm the judgment of the district court.

## II.

In *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975), the Supreme Court recognized and reaffirmed the long-standing "American Rule" that, absent a statutory or common law exception, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." 421 U.S. at 247.

As we have stated above, appellants claim that three such exceptions apply to the instant action and hence that the district court erred in denying their application for attorneys' fees and costs.

### A.

First, appellants claim that they are entitled to fees and costs under the common fund doctrine.

It is within "the historic power of equity to permit ... a party ... recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund ... itself or directly from the other parties enjoying the benefit." *Alyeska, supra,* 421 U.S. at 257. The common fund doctrine "stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees". *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980).

Appellants argue that the amount paid by Kiewit Corp. for the KMI preferred and KMI Series C during the tender offer constitutes the "fund" in the instant case, that the tender offer would not have been made

but for their action against appellees, and therefore that they are entitled to a percentage of that "fund" as an award of attorneys' fees and costs.

■ Even assuming that there was a causal relationship between appellants' law suit and Kiewit Corp.'s tender offer—a proposition as to which we express no opinion—appellants' argument is without merit. The award appellants seek would not be payable out of any "fund". Nor would it be taxed against persons who have derived benefit from appellants' law suit. Rather, the award would be taxed directly against Kiewit Corp. Such a result finds no support either in the rationale for the common fund doctrine or in the cases on which appellants rely. As the district court correctly concluded, appellants' claim "is without legal basis".

The common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing, supra,* 444 U.S. at 478. Consistent with this perception, the doctrine has been applied to award fees against a fund created by the plaintiff for the benefit of others, *e.g., id.;* to award fees against a fund not created by the plaintiff but redistributed as a result of its attorneys' efforts, *e.g., United States v. American Society of Composers, Authors and Publishers,* 466 F.2d 917, 918–19 (2 Cir.1972); and, in shareholder derivative actions, to award fees indirectly against other shareholders benefiting from the law suit by taxing the nominal corporate defendant, *e.g., Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 396–97 (1970). In *Mills,* the Supreme Court explained the rationale underlying application of the common fund doctrine to shareholder derivative actions:

> "To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit."

396 U.S. at 396–97.

In the instant case, appellants do not claim, and there is no basis for holding,

that Kiewit Corp. has benefited from appellants' law suit or that it has been "unjustly enriched at [appellants'] expense." *Boeing, supra,* 444 U.S. at 478. Indeed, assuming without deciding that appellants' law suit was successful, to award fees and costs against Kiewit Corp. *would be* "to saddle the unsuccessful party with the expenses". *Mills, supra,* 396 U.S. at 396.

The rationale underlying the common fund doctrine compels the conclusion that it has no application whatever to the instant case. *Cf. Bailey v. Meister Brau, Inc.,* 535 F.2d 982, 995 (7 Cir.1976) ("Counsel fees may not be awarded in derivative actions where they would effectively cast the litigation expenses of the prevailing party on a losing adversary."); *Hander v. San Jacinto Junior College,* 519 F.2d 273, 280–81 (5 Cir.1975) (reversing fee award against college because award would not shift costs to benefited teachers and employees).

The case on which appellants place primary reliance, *Koppel v. Wien,* 743 F.2d 129 (2 Cir.1984), is not to the contrary. In *Koppel,* two participants in a real estate venture sued two of the venture's general partners, seeking to enjoin a modification of the venture agreement. After commencement of the law suit, the defendants decided not to modify the agreement, and the suit was dismissed. The issue before our Court was whether the law suit "entitle[d] the plaintiffs to recover their attorney's fees for having conferred a benefit on the [venture's] participants." 743 F.2d at 130. In remanding the case to the district court to consider whether there was a causal connection between the law suit and the defendants' decision not to modify the agreement, we suggested that a fee award against the defendants might be appropriate if it "would result in a pass-through of such litigation costs to all the [venture's] participants." *Id.* at 135. We observed that "[t]he better course, however, would be to impose any award directly upon [the venture]." *Id.*

We fail to see the relevance to the instant case of the massive reliance placed by

appellants on *Koppel. Koppel* merely applies in the partnership context those principles applied in the derivative action context by the Supreme Court in *Mills.* In the instant case, an award of attorneys' fees and costs against Kiewit Corp. would not "pass-through" to any of the stockholders purportedly benefiting from appellants' law suit. Rather, Kiewit Corp. would have to bear those expenses alone. We conclude that *Koppel* does not support appellants' claim.

Accordingly, we hold that the common fund doctrine does not apply to the instant action because appellants seek fees and costs from Kiewit Corp., not from any "fund" or from those persons who purportedly have benefited from appellants' law suit.

## B.

Second, appellants claim that they are entitled to fees and costs under the so-called "bad faith" exception to the American Rule.

■ Under the bad faith exception, "a court may assess attorneys' fees ... when the losing party had 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Alyeska, supra,* 421 U.S. at 258–59 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974)). Appellants argue that appellees acted in bad faith by "launch[ing] their extra-judicial settlement with the class [in] flagrant avoidance of Rule 23". Rule 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." According to appellants, Kiewit Corp.'s tender offer constituted a compromise of a class action made without court approval. Since the effect of the tender offer was to make the creation of a common fund impossible, so appellants' argument goes, Kiewit Corp. should be taxed with appellants' costs and attorneys' fees.

Appellants base their argument on *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326 (1980), and *Kahan v. Rosenstiel,* 424 F.2d 161 (3 Cir.), *cert. denied,* 398 U.S. 950 (1970).

*Deposit Guaranty* does not support appellants' argument. There, the Court held that the tender of a full monetary settlement to the named plaintiffs and the entry of judgment in their favor does not bar an appeal from an order denying class certification if the plaintiff retains an economic interest in such certification. 445 U.S. at 336–37. In so holding, the Court recognized that "[a] significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs *among all members of the class who benefit from any recovery.*" *Id.* at 338 n. 9 (emphasis added). All else aside, *Deposit Guaranty* does not address any issue relevant to appellants' claim of an entitlement to fees under the bad faith exception to the American Rule.

In *Kahan,* the plaintiff, a minority shareholder, commenced a class action against the directors of the corporation. He alleged that the directors had violated federal securities laws in offering the majority shareholder more money for his shares than was offered to minority shareholders. After commencement of the action, the directors increased the offer to the minority shareholders. When the shareholders accepted the directors' offer, the district court, noting that the plaintiff never had moved to certify the class, *Kahan v. Rosensteil,* 300 F.Supp. 447, 452 n. 9 (D.Del. 1969), dismissed the action as moot and denied the plaintiff's application for attorneys' fees. In reversing, the Third Circuit stated:

"[P]laintiff seeks the highly unusual relief of having counsel fees paid by an adverse party.... [W]here the behavior of a litigant has reflected a willful and persistent 'defiance of the law', a court of equity has the power to charge an adverse party with plaintiff's counsel fees.... Such awards, however, are clearly reserved for exceptional cases....

*In order to place himself within the scope of these cases, plaintiff here points to defendants' conduct in settling the suit without consulting plaintiff, his counsel or the court, and thus in plaintiff's words, 'brazenly ignoring Rule 23(e).' If a court ultimately decides that a plaintiff created substantial benefit for others, it could find it inequitable to deprive plaintiff of counsel fees, merely because defendants prevented the physical creation of the fund by flagrantly ignoring Rule 23.*"

424 F.2d at 167–68 (footnote and citations omitted) (emphasis added).

*Kahan* is analogous to the instant case in that appellants also point to a violation of Rule 23(e) as the basis for the conclusion that appellees acted in bad faith. The instant case, however, is not an "exceptional" one justifying an award of fees against Kiewit Corp. because, in view of *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770 (2 Cir.1972) (Friendly, J.), appellees here did not violate Rule 23(e); nor did they "flagrantly", or even "brazenly", ignore it. In *Weight Watchers*, the plaintiff, representative of a putative class, appealed from an interlocutory order of the district court permitting the defendant under certain conditions to negotiate settlements with members of the class. There, as here, the class had not been certified. In dismissing for lack of appellate jurisdiction, Judge Friendly, writing for our Court, stated:

"[E]ven if defendant should succeed in settling with so many [members of the putative class] that the court will be forced to deny class action status, plaintiff's complaint will remain untouched. As we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other[s] who prefer to settle; F.R.Civ.P. 23(e), requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect upon the rights of others."

455 F.2d at 775 (citing *Webster Eisenlohr v. Kalodner*, 145 F.2d 316 (3 Cir.1944) (en banc), *cert. denied*, 325 U.S. 867 (1945)). We take judicial notice that Judge Friendly was thoroughly familiar with the Third Circuit decisions in this area, having cited in *Weight Watchers* the Third Circuit en banc decision in *Kalodner* and having declined to cite the Third Circuit's decision in *Kahan* (the latter decided 24 years after the former).

*Weight Watchers* establishes that, at least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class. In the instant case, therefore, even if the tender offer were deemed to have been a settlement or "compromise", Kiewit Corp. neither violated nor ignored Rule 23(e). There is simply no basis for concluding that any of the appellees acted in bad faith, justifying an award of attorneys' fees and costs.

Indeed, it appears that the tender offer did not even rise to the level of a "settlement" which was approved in *Weight Watchers*. The tender offer here did not result in the relinquishment of any claim by any member of the putative class. As a result of the tender offer, KMI Continental stockholders received less for their shares than was claimed in appellants' amended complaint. Moreover, the tender offer did not reach a class as broad as the one appellants sought to have certified: appellants moved to certify a class including holders of Continental stock at the time of Kiewit Corp.'s buy-out of Continental, as well as holders of KMI Continental stock at the time of Kiewit Corp.'s tender offer. No potential member of the class signed a release.

Although not dispositive of appellants' claim under the bad faith exception, it strikes us as noteworthy, in light of their arguments in the district court on their motion to dismiss on mootness grounds, that appellants would have us hold that Kiewit Corp.'s tender offer violated Rule 23(e). In urging the district court to dismiss the action as moot, appellants asserted that "notice of dismissal is not required

by Rule 23", notwithstanding that such dismissal would, and indeed did, result in the relinquishment of claims. By contrast, appellants seek to persuade us that Rule 23 barred Kiewit Corp.'s tender offer, even though that offer did not lead to the relinquishment of any claim by any member of the putative class.

■ In connection with their claim under the bad faith exception, appellants argue that the district court erred in reserving decision on their class certification motion pending disposition of appellees' motions to dismiss the amended complaint. We find that argument to be without merit since the procedure followed by the court was well within its discretion. *E.g., Wright v. Schock,* 742 F.2d 541, 544 (9 Cir.1984) (district court had discretion to decide summary judgment motion before class certification motion so as "to protect both the parties and the court from needless and costly further litigation."). In any particular case, such procedure may or may not be appropriate depending on the complexity of the legal or factual issues raised by the motion to certify. In light of the breadth of the class appellants sought to certify, and in light of the absence of any showing that the court abused its discretion, we hold that the court did not abuse its discretion in reserving decision on the motion to certify pending the outcome of the motions to dismiss.

Moreover, even if we were to conclude that the court abused its discretion, appellants' claim under the bad faith exception still would fail. If we were to hold on appeal that the district court committed an error, that would not transform Kiewit Corp.'s tender offer, lawful at the time it was made, into an act of bad faith justifying an award of attorneys' fees. At the time of the tender offer, the class had not been certified. Under *Weight Watchers,* Kiewit Corp. did not violate Rule 23(e).

We hold that appellants are not entitled to attorneys' fees and costs under the bad faith exception to the American Rule because Kiewit Corp.'s tender offer did not constitute a violation of Rule 23(e).

In light of the facts and circumstances of this case, we find it neither necessary nor appropriate to address the question whether Kiewit Corp.'s tender offer would have violated Rule 23(e) if it had been made *after* certification of the class. Nor do we express any opinion as to any possible remedies that appellants may have to recover attorneys' fees and costs from the KMI Continental stockholders who purportedly benefited from appellants' law suit.

## C.

Finally, appellants claim that the district court erred in denying their application because they were entitled to attorneys' fees and costs under Section 909 of the New York Civil Practice Law and Rules, N.Y. Civ.Prac.L. & R. § 909 (McKinney 1976).

■ State statutes providing for awards of attorneys' fees and costs ordinarily apply to state law claims made in a federal court. *Alyeska, supra,* 421 U.S. at 259 n. 31. Section 909 therefore potentially might have been applicable to the instant case since the amended complaint asserted a claim for breach of fiduciary duty under New York common law.

Section 909 provides:

"If a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys' fees to the representatives of the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class."

Appellants argue in our Court that "justice requires" allowance of a recovery of fees and costs "from the opponent of the class." They make this argument notwithstanding the lack of class certification, the lack of a judgment "rendered in favor of the class", and hence notwithstanding the apparent inapplicability of Section 909 to the instant case. *See Froehlich v. Toia,* 71 A.D.2d 824, 825, 419 N.Y.S.2d 386, 387–88 (4th Dep't 1979) ("Where class action status is not obtained ... attorneys fees may not be awarded (CPLR 909)."), *appeal de-*

*nied,* 48 N.Y.2d 611, 401 N.E.2d 919, 425 N.Y.S.2d 1026 (1980); *Suffolk Housing Services v. Town of Brookhaven,* 69 A.D.2d 242, 249, 418 N.Y.S.2d 452, 457 (2d Dep't) (Section 909 applicable only to actions "which were properly designated as class actions."), *appeal dismissed,* 48 N.Y.2d 652, 396 N.E.2d 485, 421 N.Y.S.2d 202 (1979), and *appeal dismissed,* 49 N.Y.2d 799, 403 N.E.2d 458, 426 N.Y.S.2d 735 (1980); 2 Weinstein, Korn & Miller, New York Civil Practice ¶ 909.2, at 9–194 (1986) ("Before the provisions of CPLR 909 may be invoked, there must be a class. Unless a class is certified, there is no procedure by which the attorneys for the plaintiffs may recover fees from anyone other than the plaintiffs.").

█ It is neither necessary nor appropriate, however, for us to decide the extent, if any, to which Section 909 might apply to the instant case, since appellants failed to assert their claim based on the statute in the district court. If, as appellants now assert on appeal, "Judge Burns apparently concluded that only federal law was implicated in her consideration of plaintiff's application for legal fees", she apparently did so only because appellants made no mention of Section 909, or any other state statute, in their moving papers, affidavits, or at oral argument on their application for fees and costs. Under such circumstances and in the absence of some extraordinary need not here present for us to do so, we decline to consider appellants' claim under the statute. *Singleton v. Wulff,* 428 U.S. 106, 120 (1976) ("It is the general rule ... that a federal appellate court does not consider an issue not passed upon below."); *Grace Towers Tenants Association v. Grace Housing Development Fund Co., Inc.,* 538 F.2d 491, 495 (2 Cir.1976) ("By failing to urge [a] claim below, [appellants] may be held to have waived it."), *Terkildsen v. Waters,* 481 F.2d 201, 204 (2 Cir. 1973) (Feinberg, J.) (where the appellant failed to press an issue in the district court either before entry of judgment or after such entry by motion pursuant to Fed.R. Civ.P. 59(e), "we see no reason to depart from the general rule of practice which forecloses appellate consideration of issues not raised below.").

Accordingly, we decline to consider appellants' claim under Section 909 because appellants did not assert that claim in the district court.

### III.

To summarize:

Under the "American Rule", a litigant ordinarily must bear his own expenses of litigation and cannot recover his attorneys' fees and costs from the losing party absent a statutory or common law exception.

Appellants claim that the district court erred in denying their application for an award of attorneys' fees and costs against Kiewit Corp. since three exceptions to the American Rule apply to their action.

The common fund doctrine permits a party who has recovered a fund for the benefit of others in addition to himself to recover his fees and costs from the fund or from the persons enjoying the benefit. We hold that the doctrine does not apply to the instant action because appellants seek fees and costs from Kiewit Corp., not from any "fund" or from those persons who purportedly have benefited from appellants' law suit.

Similarly unavailing is appellants' claim to an entitlement to attorneys' fees under the bad faith exception. Appellants base that claim on the theory that Kiewit Corp.'s tender offer constituted an extra-judicial settlement in violation of Rule 23(e). The *Weight Watchers* decision by Judge Friendly, however, establishes that, at least prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of the class. Accordingly, we hold that appellants are not entitled to fees and costs under the bad faith exception because Kiewit Corp.'s tender offer did not constitute a violation of Rule 23(e). We do not address the question whether Kiewit Corp's tender offer would have violated Rule 23(e) if it had been made *after* certification of the class.

As for appellants' claim that they are entitled to fees and costs under Section 909

of the New York Civil Practice Law and Rules, we decline to consider that claim because appellants did not assert it in the district court.

We affirm the judgment of the district court denying appellants' application to recover attorneys' fees and costs from Kiewit Corp. and we do so essentially on the excellent opinion of Judge Burns in the district court.

Affirmed.

FEINBERG, Chief Judge (dissenting):

I respectfully dissent.

The question before us is whether a defendant can go outside of the judicial structure to settle in effect with an entire class and thereby bar, as a matter of law, what appears to be a meritorious claim of plaintiffs' attorneys for fees. Because I believe that such action may constitute a bad faith evasion of Rule 23(e) of the Federal Rules of Civil Procedure that would justify an award of attorney's fees against defendants, I write separately in dissent.

It is important to appreciate the full flavor of what happened here, assuming that plaintiffs' allegations are true, as we must in deciding the issue before us. In November 1984, plaintiffs were holders of Series C and Preferred stock in Continental Group, Inc., which was publicly owned, before that company was merged into a subsidiary of defendant Kiewit-Murdock Investment Corporation (KMI), a privately owned company. Under the merger, KMI paid cash for Continental Series A, Series B and Common stock, but holders of Series C and Preferred stock received only stock certificates in the new entity formed as a result of the merger. Plaintiffs brought suit, alleging that defendants engaged in unlawful manipulation in violation of federal securities laws and that defendants breached a fiduciary duty owed to plaintiffs, by leaving them, after the merger, with "speculative low grade, highly leveraged securities" rather than cash. In October 1985, KMI announced a tender offer for all outstanding shares of Preferred and Series C stock. That tender offer prompted plaintiffs' counsel to move to dismiss the

lawsuit as moot, claiming that the tender offer satisfied the objective of the lawsuit. Thus, the putative class of Series C and Preferred shareholders, who had been shareholders in a publicly owned corporation, found themselves in November 1984 locked into an unattractive position in a new private entity, although all the other stockholders were bought out in cash. One year later, however, defendants saw to it that the stock owned by the unfortunate members of the putative class was also "cashed out." This immense change in the position of plaintiffs' class was brought about by the efforts of plaintiffs and their attorneys.

We must therefore decide whether defendants, having corrected under pressure an injustice to the putative class, are immune as a matter of law from a claim by plaintiffs for attorney's fees. The district court denied plaintiffs' claim for attorney's fees holding, among other things, that "Rule 23 does not appear to apply in situations such as the present where, prior to the certification of a class, a defendant takes some action which has the effect of mooting the claims of potential class members." The majority agrees that defendants cannot be held liable to plaintiffs for any fee. I respectfully disagree.

When a defendant makes an offer that moots an action after a class complaint is filed, but before a class is certified, plaintiffs' attorneys should be entitled to fees if the district court decides that (1) it would have certified the class, (2) the complaint could have withstood a motion to dismiss and (3) the lawsuit was the proximate cause of any benefit the class received. *Kahan v. Rosenstiel*, 424 F.2d 161, 167–68 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Cf. *Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir.1984) ("Where ... plaintiffs' lawsuit is mooted by defendants' corrective action, the burden properly shifts to defendants to establish the absence of a causal connection in order to defeat a claim for legal fees.") (citations omitted). Plaintiffs' attorneys would then most likely be entitled to fees from a "common fund" consisting of mo-

nies from defendant's offer. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). When, however, a defendant bypasses the court and no such fund can be created, neither precedent nor policy reasons justify denying fees to plaintiffs' attorneys as a matter of law. Rather, such action violates Rule 23(e) and fees should be available, if warranted, directly from the defendant.

The force of persuasive reasoning as precedent supports this approach. Judge Arlin Adams' opinion in *Kahan v. Rosenstiel* is right on point. As in this case, defendants in *Kahan* made a public offer to potential class members, before a class was certified, without seeking court supervision or approval of the offer. 424 F.2d at 165. The Third Circuit found that defendants' action could be considered a "bad faith" attempt to evade the requirements of Rule 23(e) that could support an award of attorney's fees against defendants. Id. at 165, 174. The *Kahan* court wrote,

> If a court ultimately decides that a plaintiff created substantial benefit for others, it could find it inequitable to deprive plaintiff of counsel fees, merely because defendants prevented the physical creation of [a] fund by flagrantly ignoring Rule 23.

Id. at 168 (footnote omitted).

Moreover, the basis of this ruling—that the spirit and policies behind Rule 23 may apply in the pre-certification stage of a class suit—is not at all unusual. See, e.g., *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) (Friendly, J.), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Plummer v. Chemical Bank*, 668 F.2d 654, 657–58 (2d Cir.1982); *Simer v. Rios*, 661 F.2d 655, 664–66 (7th Cir.1981), cert. denied, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *In re Beef Industry Antitrust Litigation*, 607 F.2d 167 (5th Cir.1979) (Widsom, J.), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405

(1981); *Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir.1978); 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1797, pp. 346–50 (2d ed. 1986) ("courts generally have agreed that actions filed as class suits are within the scope of Rule 23(e) even though they have not been formally certified at the time settlement is reached"); 3B J. Moore, Moore's Federal Practice ¶ 23.80[2], p. 509 & n. 11 (2d ed. 1985); Comment, The Applicability of Rule 23(e) to Precertification Proceedings: The Functional Approach Applied, 25 Vill.L. Rev. 487 (1979–80).

The majority relies heavily on Judge Friendly's opinion in *Weight Watchers of Philadelphia v. Weight Watchers International*, 455 F.2d 770 (2d Cir.1972), which preceded by a decade his opinion in *Weinberger v. Kendrick*, 698 F.2d 61. *Weight Watchers* does not preclude the approach I propose. That case, which was decided on a motion to dismiss the appeal, held nonappealable an order allowing defendant to conduct settlement discussions with members of a putative class; it did not deal with the issue of attorney's fees at all. The majority places undue reliance on dictum in that opinion, which suggests that Rule 23 does not prevent negotiations between defendants and individual members of a potential class. 455 F.2d at 773. Judge Friendly acknowledged, however, that a settlement with individual class members, who may compromise their individual claims and possibly dilute the class, differs from an offer to the class as a whole, which could moot the entire action. Id. at 773, 775.

Unlike the defendants in *Weight Watchers*, defendants in this case did not attempt to negotiate with individual potential class members. Instead, through the public tender offer defendants extended an offer to the entire putative class—an offer that effectively settled the case by mooting the entire action.[1] This is precisely the activity

1. I disagree with the majority's suggestion that defendants' tender offer was not a settlement offer simply because it was directed at a group of stockholders less broad than the plaintiffs' proposed class and for an amount less than plaintiffs demanded in their amended complaint. Except for minor variations due to stock transactions between the time of the merger and the tender offer, defendants' tender offer for all of the outstanding shares of Preferred and Series C stock encompassed the class of persons plaintiffs sought to represent. More-

that Rule 23(e) was designed to control through judicial review and supervision. By circumventing that review and supervision, defendants violated Rule 23.

The district judge improperly relied on *Weight Watchers* to support her finding that Rule 23 cannot apply to defendants' settlement offer to plaintiffs' class. That case simply does not apply here. Indeed, when faced with this issue, this court has indicated that Rule 23(e) may be applied to dismissals or settlements agreed to before class certification. See *Weinberger v. Kendrick,* 698 F.2d at 73; *Plummer v. Chemical Bank,* 668 F.2d at 658. See also *Robinson v. First National City Bank,* 482 F.Supp. 92, 100 (S.D.N.Y.1979); *Jaen v. New York Telephone Co.,* 81 F.R.D. 696 (S.D.N.Y.1979). As stated by then district judge Walter R. Mansfield in *Gaddis v. Wyman,* 304 F.Supp. 713 (S.D.N.Y.1969):

> Defendants are not aided in their argument by the fact that a court has never determined that a class in fact exists, for 'during the interim between filing and [a determination concerning class certification, the lawsuit] must be assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until a contrary determination is made....'

Id. at 715, quoting *Philadelphia Electric Co. v. Anaconda American Brass Co.,* 42 F.R.D. 324, 326 (E.D.Pa.1967) (citations omitted). Rule 23 does not apply only after a class has been certified. The Rule may also be relevant earlier if the court determines that the lawsuit would have been an appropriate class action.

The majority's approach is also inconsistent with sound policy concerns. It conflicts with the important role of "private attorney general" played by attorneys for plaintiffs in class suits that was recognized by the Supreme Court in *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 338, 100 S.Ct. 1166, 1173, 63 L.Ed.2d 427

(1980). In contrast, permitting defendants to in effect settle an entire class suit and deprive plaintiffs' attorneys of fees as a matter of law will almost certainly deter attorneys from bringing class action lawsuits. Certainly, frivolous class suits should be discouraged but, as defendants' actions make clear, this class suit was not frivolous.

Finally, I do not believe that requiring defendants to subject these public offers to judicial supervision will discourage curative action or quick settlements. In deciding whether plaintiffs' attorneys are entitled to fees the court can take into account how much, or how little, plaintiffs had to do in obtaining the settlement. Obviously, the sooner a defendant acts to satisfy plaintiffs' demands by paying the money offered into court, the lower the fees.

The outcome of this case depends on an analysis of policy views concerning class actions. In my view, the majority has followed the wrong policy. I would remand the case to the district court to allow it to consider whether it would have certified the class, whether the complaint would have withstood a motion to dismiss before defendants mooted the case, and whether the lawsuit was the proximate cause of any benefit to the class. If the answer to these questions is affirmative, I would expect the district court, in the exercise of its discretion, to award a reasonable fee under all the circumstances to be paid by defendants.

---

over, it does not matter that defendants offered less than plaintiffs sought in their lawsuit because a settlement price is almost always somewhat less than the amount originally demanded. I also disagree with the majority's suggestion that the tender offer could not be a settlement unless plaintiffs were required to sign releases. Under a realistic view of the terms and timing of defendants' transaction, defendants' public tender offer was clearly a settlement offer directed at the plaintiff class.